660 P.2d 1021

**Karl OHLSON, individually and as Personal Representative of the Estate of Anita Joyce Ohlson, Deceased, Plaintiff-Appellee**

**and**

**Truck Insurance Exchange, et al., Plaintiffs in Intervention-Appellees,**

**v.**

**KENT NOWLIN CONSTRUCTION COMPANY, a New Mexico Corporation and Gas Company of New Mexico, a New Mexico Corporation, Defendants-Appellants.**

**No. 6015.**

Court of Appeals of New Mexico.

Jan. 11, 1983.

Certiorari Denied Feb. 28, 1983.

Ortega and Snead, P.A., Charles P. Reynolds, William E. Snead, Leon Taylor, P.A., Albuquerque, for plaintiff-appellee.

Lill, Kelly and Barr, P.A., Leo C. Kelly, Albuquerque, for plaintiffs in intervention-appellees.

Miller, Stratvert, Torgerson & Brandt, P.A., Robert Bruce Collins, Harris L. Hartz, Albuquerque, for defendant-appellant Gas Co. of New Mexico.

Geoffrey D. Rieder, Peter J. Adang, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendant-appellant Kent Nowlin.

## OPINION

NEAL, Judge.

Kent Nowlin Construction Company brings this interlocutory appeal from the denial of its motion in limine. Two issues are raised:

(1) Can the plaintiffs introduce evidence of other incidents of damage to other gas lines to prove that Kent Nowlin negligently damaged the gas line next to the plaintiff's home?

(2) Did the trial court err in ruling that evidence of other incidents of damage, properly admissible against the Gas Company of New Mexico to show notice, could cover those incidents occurring up until December 2, 1979?

We affirm in part and reverse in part.

*Facts*

The plaintiff's wife, Anita Ohlson, died as a result of a natural gas explosion at the Ohlson home on the morning of December 2, 1979. The plaintiff has filed this negligence action against Kent Nowlin Construction Company (Kent Nowlin) and the Gas Company of New Mexico (Gas Company).

The stipulated facts show that shortly after the explosion a 2⅜″ gas main was uncovered in the street next to the Ohlson home. It was gouged and dented, and a circumferential fracture had developed at the point of the gouge and dent. This damage to the gas main was found at a point approximately 18 feet from the nearest wall of the Ohlson home.

Ohlson's theory is that Kent Nowlin, while performing excavation work near his home, negligently damaged the gas line, that the Gas Company failed to perform reasonable inspections, and that the negligence of both defendants caused gas from the damaged gas main to seep under his house, where it was ignited.

The defendants' theory is that a backhoe could not have caused the damage to the gas main, and that the gas main was not the cause of the explosion. Their theory is that there was a ¾″ gas service line in the crawl space underneath the Ohlson home that was badly deteriorated from corrosion, and that it was this gas line that caused the explosion.

On July 8, 1977, the City of Albuquerque and Kent Nowlin entered into a contract for the construction of a sanitary sewer system in Albuquerque's South Valley. Phase I of this project was to include an area bounded by Rio Bravo on the south, Coors Road on the west, Central Avenue on the north, and Isleta Boulevard on the east. The Ohlson home was located within this area, on the corner of Sunset Drive and Airway Drive.

From May 1974 to May 1978 Kent Nowlin performed the following work in the vicinity of the Ohlson home.

| DATE | KENT NOWLIN ACTIVITY |
|---|---|
| 3/74 | Water line installed on Airway. |
| 9/7/77 | 300′ sewer main installed on Airway. |
| 3/15/78 | 90′ sewer main installed on Airway; sewer line installed on Sunset north from manhole at the Airway intersection; sewer line installed on Sunset south from the manhole at the Airway intersection. |
| 3/21/78 | Manhole set at intersection of Sunset and Airway. |
| 5/1/78 | Manhole connected in intersection of Sunset and Airway. |
| 5/8/78 | Sewer service connected from sewer main in Airway to Ohlson residence. |
| 5/78 | Old sewer crushed on Sunset north and south of manhole. |

The stipulated facts also show that between March 1974 and May 10, 1978, Kent Nowlin excavated with backhoes and other heavy mechanical equipment, within 60 feet of the damaged gas line next to the Ohlson home, on at least eight separate occasions. Further, no one other than Kent Nowlin had done similar work in the area.

*The Motion in Limine*

There is evidence the Gas Company claimed that, between May 1977 and December 1979, Kent Nowlin damaged 242 of its gas lines while performing the South Valley Sewer Project. Kent Nowlin paid for damage to 166 of these lines.

Kent Nowlin, fearing that the plaintiff would try to introduce this evidence, filed a

motion in limine. After argument, the trial court denied the motion.

In its order denying the motion the trial court admitted Exhibit 8, a map showing 242 other incidents of damage to gas lines that took place during the South Valley project, stating that "these incidents are being admitted solely on the issue of notice to the Gas Company and thus its duty of care." The court stated that it would give a limiting instruction consistent with this.

Kent Nowlin had paid the Gas Company for the damage to 166 of these 242 incidents. The trial court believed that Kent Nowlin had therefore admitted fault for 166 incidents of damage at other locations. The court allowed the plaintiff to introduce these 166 incidents, against Kent Nowlin, as circumstantial evidence of negligence by Kent Nowlin, and as "habit" evidence under Evidence Rule 406 (N.M.R.Evid. 406, N.M.S.A.1978).

In its order the trial court further found that the 166 incidents were substantially similar to the incident in this case, but stated that he would instruct the jury that before they could consider any incidents as circumstantial evidence of negligence they must find that the prior incidents were substantially similar.

We discuss the ruling in two parts: how the evidence may be used against Kent Nowlin; and how it may be used against the Gas Company.

1. *Evidence against Kent Nowlin.*

█ We do not agree that evidence of the 166 prior incidents of damage is admissible as circumstantial evidence of Kent Nowlin's alleged negligence in this case.

In effect, the plaintiff is trying to get this argument before the jury: Because Kent Nowlin damaged 166 other gas lines, in other locations, it damaged the gas line next to my home.

All evidence, to be admissible, must be relevant. N.M.R.Evid. 402, N.M.S.A.1978. "Relevant evidence" is defined in N.M.R. Evid. 401, N.M.S.A.1978.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

There is, and can be, no fixed rule delineating relevant and irrelevant evidence. The problem must be decided on a case-by-case basis.

The fact that is of consequence is: "Did Kent Nowlin damage the gas line next to the Ohlson home?" Evidence that Kent Nowlin while performing a project covering virtually the entire southwest quadrant of Albuquerque damaged other lines at other locations is simply not relevant to prove this fact.

First, the fact that Kent Nowlin paid for damage to 166 other lines does not establish liability for those incidents. N.M.R.Evid. 408, N.M.S.A.1978. Even if it did establish liability the fact that Kent Nowlin damaged other lines during this project is not relevant to prove that it damaged the line near the Ohlson home.

We agree with *Fullerton v. Glens Falls Gas & Electric L. Co.,* 148 App.Div. 481, 132 N.Y.S. 995 (1911). In *Fullerton* the plaintiff brought a negligence action against the gas company contending that it had negligently allowed escaping gas to damage his shade trees. The plaintiff was allowed to introduce evidence of other leaks along the plaintiff's street. The court reversed plaintiff's judgment, stating:

Howsoever negligent the defendant may have been at other places and in front of other property, its liability in this case depends upon its negligence only in front of the plaintiff's property, in proximity to the trees that were claimed to have been destroyed. Evidence of complaints of leakage, and of leakage at other points in this 1,600 feet of gas pipe upon First street, was therefore incompetent evidence of negligent construction in front of plaintiff's property, and was most damaging evidence, and must certainly have influenced the jury in the verdict rendered.

Under the circumstances of this case, evidence of 166 incidents of damage at other locations is not relevant to prove that Kent Nowlin negligently damaged the line near the Ohlson home.

This evidence must be excluded for another reason. All evidence is subject to N.M.R.Evid. 403, N.M.S.A.1978. *State v. Day,* 91 N.M. 570, 577 P.2d 878 (Ct.App.), *cert. denied,* 91 N.M. 491, 576 P.2d 297 (1978). Assuming *arguendo* that these other incidents at other locations have some bearing on Kent Nowlin's alleged negligence in this case, they should be excluded. The probative value of the evidence is tenuous. The damage occurred at points all over the southwest quadrant of Albuquerque. Also, Kent Nowlin encountered thousands of gas lines in the performance of the sewer project. Balanced against this is the great danger that this evidence would cause unfair prejudice, confusion of the issues, and mislead the jury. We recognize that a jury is likely to give undue weight to evidence that Kent Nowlin damaged other gas lines, many of which were miles away from the Ohlson home, and which were damaged after May 1978, when Kent Nowlin last worked in the vicinity of the Ohlson home. Further, if this evidence were admitted there would be a confusion of issues. Much time would be spent presenting evidence on specific incidents at other locations. The plaintiff would try to prove that the other incidents were similar to this case, and the defendants would try to prove they were dissimilar. This could only result in confusion. Whatever may have happened on Isleta Boulevard, or Gold Street, or Central Avenue, is not the critical issue in this case. This evidence is inadmissible under Evidence Rules 401, 402 and 403.

■ This evidence is also inadmissible under N.M.R.Evid. 406, N.M.S.A.1978. That rule states:

(a) **Admissibility.** Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

To argue that Kent Nowlin had a "habit" of damaging gas lines is to stretch Evidence Rule 406 far beyond its intended meaning. It does not apply here.

"Habit" is defined in *De La O v. Bimbo's Restaurant,* 89 N.M. 800, 558 P.2d 69 (Ct. App.), *cert. denied,* 90 N.M. 7, 558 P.2d 619 (1976).

Habit "describes one's regular response to a repeated specific situation. * * * A habit * * * is the person's regular practice of meeting a particular kind of situation with a specific type of conduct * *." Advisory Committee Notes to Proposed Rules of Evidence for United States Courts.

Examples of a habit are that a person has the "habit of going down a particular stairway two stairs at a time, or of giving the hand signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic." McCormick, The Law of Evidence (2d ed. 1972) § 195, at 462–463.

The problem here is not properly characterized as "habit" evidence.

Somewhat related to the problem of habit is that of similar occurrences used to prove an event in civil litigation. This is a subject covered by the general rules of relevancy, Rules 401, 402 and 403. 2 Weinstein's Evidence, ¶ 406[01] (1981).

As previously discussed, evidence of the prior incidents of damage at other locations, examined in light of Evidence Rules 401, 402 and 403, is not admissible to prove negligence in the incident in question, no matter how it may be characterized. Even if this were "habit" evidence, it is still not admissible, because Rule 403 applies to "habit" evidence. *See* Advisory Committee Notes to Proposed Rules of Evidence for United States Courts; 2 Weinstein's Evidence, ¶ 406[04] (1981).

As part of his case the plaintiff will try to prove that instead of carefully staking out the location of gas lines, to avoid damaging

them with heavy excavation equipment, Kent Nowlin "found" gas lines by using a backhoe. Plaintiff may prove this by direct testimony, not by evidence of other incidents of damage. Evidence of other incidents of damage, standing alone, does not establish that Kent Nowlin had a "habit" of using backhoes to "find" gas lines.

■ Finally, the plaintiff contends that the other incidents are admissible to prove that both defendants acted recklessly. He seeks punitive damages. His argument is that the defendants routinely violated § 62–14–3, N.M.S.A.1978, and that the other incidents prove this. We disagree. The statute provides practices that should be followed when excavating, such as methods of locating utility lines and notifying the owner of the utility lines when the lines have been damaged. If plaintiff wants to prove that Kent Nowlin or the Gas Company routinely violated the statute, he may do so by presenting direct testimony. The fact that other gas lines were damaged does not prove that § 62–14–3 was violated.

2. *Evidence against the Gas Company.*

■ In its order the trial court stated that it would admit evidence of 242 incidents of other damage at other locations to be used solely on the issue of notice to the Gas Company and its duty of care. The Gas Company has not challenged the order insofar as it provides that other damages at other locations is admissible against it on the issue of notice. The trial court's ruling on this issue is correct. *See* McCormick, The Law of Evidence (2nd ed. 1972), at 475; and cases cited in 2 Wigmore, Evidence § 252 (Chadbourn Rev.1979). The trial court also correctly concluded that a limiting instruction, instructing the jury that this evidence is to be used only on the issue of notice to the Gas Company, should be given.

The Gas Company has challenged the order insofar as it provides that incidents that occurred up until December 1979 are admissible for this purpose. It contends that the evidence should be limited to incidents occurring between May 1979. We reject this argument.

The Gas Company's position is that "only incidents prior to the occurrence giving rise to the lawsuit would be admissible to show that notice or knowledge," and that here the occurrence giving rise to the lawsuit is the damage to the gas pipeline, allegedly caused by Kent Nowlin, which the plaintiff claims occurred before the end of May 1978. This is incorrect.

■ There is no cause of action for negligence until there has been a resulting injury. *Spurlin v. Paul Brown Agency, Inc.,* 80 N.M. 306, 454 P.2d 963 (1969). Here, there was no injury, and no tort, until the explosion. It follows that the explosion was the occurrence giving rise to the lawsuit.

The Gas Company's duty continued up until December 2, 1979, the date of the explosion. It did not end when Kent Nowlin ·finished its work around the Ohlson home back in May 1978. Incidents of damage to other gas lines occurring prior to December 2, 1979, are relevant to the issue of notice to the Gas Company, and are admissible for this purpose.

We reverse the trial court's order insofar as it allows 166 prior incidents of damage at other locations to be used as circumstantial evidence, or habit evidence, to prove that Kent Nowlin negligently damaged the gas line near the Ohlson home.

We affirm the order in all other respects.

IT IS SO ORDERED.

WOOD and LOPEZ, JJ., concur.