703 P.2d 894

**AMOCO PRODUCTION COMPANY, Petitioner,**

v.

**CARTER FARMS COMPANY, A Limited Partnership, Respondent.**

No. 15644.

Supreme Court of New Mexico.

Aug. 2, 1985.

Atwood, Malone, Mann & Turner, Russell D. Mann, Charles F. Malone, Roswell, for petitioner.

McCormick & Forbes, Michael E. Dargel, Jay W. Forbes, Carlsbad, for respondent.

Poole, Tinnin & Martin, Marshall G. Martin, John W. Anderson, Robert H. Jacobvitz, Albuquerque, amicus curiae NM Cattle Growers Assoc., NM Farm & Livestock Bureau, NM Wool Growers Assoc.

Hinkle, Cox, Eaton, Coffield & Hensley, Stuart D. Shanor, John S. Nelson, Michael F. Millerick, Roswell, amicus curiae Exxon, Pennzoil, Atlantic Richfield, Superior Oil,

Energy Reserves Group, Santa Fe Energy Co., Texaco.

## OPINION

FEDERICI, Chief Justice.

Carter Farms Company, (Carter Farms), a limited partnership brought suit in the District Court of Eddy County to recover damages for the alleged negligent construction and operation of Amoco Production Company's (Amoco) drilling site and the alleged willful and wanton refusal by Amoco to restore the area in question to the condition it was in prior to the commencement of its oil and gas operations. Amoco filed an answer denying liability and asserting in defense that Amoco's use of a 4.53 acre location for its well, identified as Carter Communitized No. 1 Well, was reasonable and necessary to fully effectuate Amoco's rights and obligations under its oil and gas lease which had been assigned to Amoco from Carter Farm's grantor. Amoco also counterclaimed, asserting that Carter Farms unjustly and unreasonably interfered with Amoco's attempts to prepare and make reasonable use of the drill site.

The jury returned a verdict in favor of Carter Farms, but the trial court refused to accept that part of the jury's verdict which returned damages in the amount of $13,485 for the cost of restoring the reserve pit area constructed to service the drilling site occupied by Carter Communitized No. 1 Well. The court granted to Amoco judgment notwithstanding the verdict on that amount. The verdict of the jury was based on their answers to a list of eighteen special interrogatories submitted by the trial court. In response to Interrogatory No. 14, the jury answered that these damages were attributable to a private nuisance caused by Amoco. Carter Farms appealed to the Court of Appeals from the trial court's grant of the judgment notwithstanding the verdict, objecting to the denial of damages for the cost of restoring the surface area occupied by Amoco's reserve pit. The Court of Appeals reversed the trial court with instructions to reinstate the jury verdict. We granted Amoco's petition for writ of certiorari. We reverse the Court of Appeals and affirm the trial court.

Amoco presents two issues for our review:

1. Whether the Court of Appeals erred in imposing on a mineral lessee an implied contractual duty to completely restore the surface estate following the cessation of drilling operations, in addition to the remedies available under existing law.

2. Whether the Court of Appeals applied the proper measure of damages for injury to real property.

On July 28, 1979, Amoco commenced drilling an oil and gas well identified as Carter Communitized No. 1 Well. While drilling the well, Amoco constructed a reserve pit at the drilling site to store the drilling fluid and strain the mud and other organic materials produced by the drilling operation. Three pits were constructed in all: the reserve pit, a spillover pit and a burn pit. The spillover pit catches the drilling fluid that may spill over from the reserve pit when the volume of mud and other organic materials exceeds the capacity of the reserve pit during the drilling operation. The burn pit is an unlined pit built to contain flares and minimizes the dangers of overpressure conditions that may result from a flowing gas well.

In digging the reserve pit, workers discovered underground water two feet below the surface area. Because of the presence of underground water, Amoco had to construct the reserve pit with dikes partially above the surface to be able to contain the drilling fluid, salt water, mud and other solids. The reserve pit could not be built in the customary manner below the surface area and Amoco had to bring in caliche to build up the walls surrounding the pit area. Amoco could not construct the pit by scooping out dirt from the center and then using that same dirt to build up the dike walls.

Upon cessation of the drilling operation, Amoco initiated the process of mixing the drill cuttings and mud with the caliche that Amoco had brought in to construct the

dikes for the reserve pit to dry out the materials so that they could begin leveling the pit area. Amoco had already used a bulldozer to partially cover up the trash that had been dumped into another pit in the same area. Although this is the customary practice in the oil and gas industry, because the dikes had to be built above the surface area, this procedure would have resulted in spreading out these materials over a greater surface area than usual.

Carter Farms refused to allow Amoco to level the reserve pit and clean all debris from the drilling site in this manner. Carter Farms insisted that Amoco completely restore the surface area of Carter Communitized No. 1 Well to its original condition by removing from the premises all of the drill cuttings and contaminated soils, including the caliche used to construct the dikes of the reserve pit. The reserve pit occupied less than one acre of the 4.53 acre portion known as Carter Communitized No. 1 Well. Carter Farms testified that the market value of the land occupied by the reserved pit was $500 for pasture purposes. The jury found that the cost of completely restoring the site to its original condition amounted to $13,485. All other damages for Amoco's negligence, exclusive of costs, awarded by the trial court totalled $1,834.

■ Amoco, in the present case, constructed a reserve pit, as required by the regulations of the New Mexico Oil Conservation Division, which was necessary to its operation at the drilling site identified as Carter Communitized No. 1 Well. It is undisputed that the use of such a pit is necessary to the drilling operation of any exploratory or test well. It is also well established in New Mexico "that an oil and gas lease conveys an interest in real estate." *Rock Island Oil & Refining Co. v. Simmons,* 73 N.M. 142, 146, 386 P.2d 239, 241 (1963); *Terry v. Humphreys,* 27 N.M. 564, 203 P. 539 (1922). When Carter Farms' grantor agreed to execute an oil and gas lease to Amoco rather than develop the minerals himself, he conveyed to Amoco his right to explore for and extract the minerals. *See Craft v. Freeport Oil Co.,* 563 S.W.2d 866 (Tex.Civ.App.1978). Amoco, as the mineral lessee, is entitled to use as much of the surface area as is reasonably necessary for its drilling and production operations. *Warren Petroleum Corp. v. Monzingo,* 157 Tex. 479, 304 S.W.2d 362 (1957); H.R. Williams & C.J. Meyers, *Oil and Gas Law* § 218.7 (1984). Amoco's surface rights and the servitude it holds, however, must be exercised with due regard for the rights of the surface owner. *Hunt Oil Co. v. Kerbaugh,* 283 N.W.2d 131 (N.D.1979); *Getty Oil Co. v. Jones,* 470 S.W.2d 618 (Tex.1971).

■ In the present case, the trial court found that Amoco's proposed method of leveling the reserve pit and cleaning the debris was reasonable. Amoco's variation in the normal construction of the reserve pit was necessary because of the presence of the underground water near the surface of the test well area. The jury determined that the land taken or used by Amoco was reasonably required for its drilling operation to develop and produce oil and gas. Amoco was at all times ready and willing to level the reserve pit area and clean the drill site as originally planned. Carter Farms argues that leaving the site in this condition created a private nuisance which required Amoco to completely restore the surface area to its original condition prior to its drilling operation. Carter Farms, however, did not plead a private nuisance theory in its original complaint. The jury found that Carter Farms had suffered a loss of or damages to that portion of the reserve pit area occupied by Carter Communitized No. 1 Well.

Because we decline to adopt private nuisance as a theory of recovery for the diminution in the value of Carter Farms' land located within the 4.53 acre site known as Carter Communitized No. 1 Well, we deem it unnecessary to discuss the inadequacy of the trial court's instructions on the theory of private nuisance. We recognize that some states have passed statutes imposing a duty upon oil and gas lessees to restore the surface, defining the abandonment of

waste and debris on the drilling site as a public nuisance. Kan.Stat.Ann. § 55–132a (1983); Ill.Rev.Stat. ch. 100½ § 26 (1983). In *Mowrer v. Ashland Oil & Refining Co.*, 518 F.2d 659 (7th Cir.1975), the federal appellate court applied the theory of private nuisance based on an Indiana statute. In *Tenneco Oil Co. v. Allen*, 515 P.2d 1391 (Okla.1973), the surface owner was awarded damages on a nuisance theory when the mineral lessee used an unreasonable amount of land and failed to remove his equipment, fill, and level the pit areas in a timely manner. That is not the case here. With these few exceptions, state courts have rarely utilized a private nuisance theory since recovery ordinarily can be based upon standard theories of negligence. *See* Truhe, *Surface Owner vs. Mineral Owner or "They Can't Do That, Can They?"*, 27 S.D.L.Rev. 376 (1982).

Traditionally, most courts have refused to impose an implied contractual duty to completely restore the surface estate to its original condition as it existed prior to the commencement of drilling operations in the absence of an express provision in the mineral lease. *See* Comment, *Oil and Gas: Does the Oil and Gas Lessee Have a Duty to Restore the Surface?*, 25 Okla.L.Rev. 572 (1972). *But see Smith v. Schuster*, 66 So.2d 430 (La.App.1953). In some jurisdictions, the states have stepped in and enacted statutes which expressly impose strict liability upon the drilling operator for surface damage caused by his operations despite the rule that the owner of the mineral estate may use so much of the surface estate as is reasonably necessary for his drilling operations. *See* S.D.Cent.Code §§ 38–11.1–01 to –10 (1980 & Supp.1983); Mont.Code Ann. §§ 82–10–501 to –511 (1983); Okla.Stats.Ann. tit. 52, §§ 318.2 to –9 (West Supp.1984–85). Carter Farms, in turn, does not urge this Court to adopt a theory that the alleged responsibility to remove the cuttings from the drilling operations, the salts, clay materials and other organic debris is founded upon any contractual provision or implied duty to restore the land. The Court of Appeals held that the mineral lessee has an implied duty of re-

storing the surface estate to its original condition as nearly as possible prior to the commencement of drilling once all pumping has ceased or the well is capped. Nonetheless, based on a theory of negligence, the trial court specifically instructed the jury that under the existing law in this State they could have determined that Amoco had made unreasonable or excessive use of Carter Farm's surface lands by constructing the reserve pit above the ground. Although Amoco's use of the surface estate was necessary to carry out its drilling operation at Carter Communitized No. 1 Well, the jury could have decided that Amoco knew or should have known that its variation from the customary industry procedure would result in greater damage to the surrounding area once the cleaning and leveling operation was commenced. *See Hurley v. Northern Pacific Railway Co.*, 153 Mont. 199, 455 P.2d 321 (1969). To the extent that the leveling and cleaning operation would have spread the mud and organic materials over a wider area causing further damage, the jury could have determined that these actions by Amoco would have been unreasonable. *See Hunt Oil Co. v. Kerbaugh; Hurley v. Northern Pacific Railway Co.* The jury having determined that the land taken or used by Amoco was reasonably required for its drilling operation, we decline to remand this issue to the trial court for the taking of further evidence on the question of the "reasonableness" of Amoco's actions.

 We disagree with the measure of damages applied by the Court of Appeals. The Court of Appeals held that the owner of the mineral estate must either restore the surface area to its original condition as it existed prior to conducting drilling operations or pay the costs of restoration even where the use of the surface area is reasonably necessary and the operator has exercised due regard for the rights of the surface owner. Damage to the surface estate by the owner of the mineral estate is founded upon the unreasonable, excessive or negligent use of the surface estate. The measure of damages under a negligence

theory of liability for permanent damage to real property is the difference between the fair market value of the land prior to the injury and the fair market value of the land after the full extent of the injury has been determined. *Ellis Drilling Corp. v. McGuire*, 321 S.W.2d 911 (Tex.Civ.App. 1959), *writ denied* NRE. When the actions of the owner of the mineral estate have rendered the surface totally unusable for a period of time, then the damages are determined by the land's rental value for that same period. *See generally*, Annot., 53 A.L.R.3d 16, § 2[e] (1973). Where temporary damage results to the surface estate, but it can be repaired, then the damages are the cost of repair or restoration if the cost of restoration does not exceed the value of the property. *See Ellison v. Walker*, 281 P.2d 931 (Okla.1955).

The trial court properly granted Amoco's motion for a judgment notwithstanding the verdict. The Court of Appeals is reversed and the judgment of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, Senior Justice, and RIORDAN and STOWERS, JJ., concur.