**Raymond L. KYSAR, Patsy Sue Kysar Family Trust, Plaintiff-Appellant,**

v.

**AMOCO PRODUCTION COMPANY, Defendant-Appellee.**

No. 01-2359.

United States Court of Appeals, Tenth Circuit.

Aug. 12, 2003.

Victor R. Marshall, Nancy L. Simmons, Victor R. Marshall & Associates, Albuquerque, NM, for Plaintiffs-Appellants.

Bradford C. Berge, Tanya M. Trujillo, Campbell, Carr, Berge & Sheridan, Santa Fe, NM, for Defendant-Appellee.

Lee E. Peters, Hubert & Hernandez, Las Cruces, NM, for Amicus Curiae.

Before HENRY, PORFILIO, and BRISCOE, Circuit Judges.

## CERTIFICATION OF QUESTION OF STATE LAW

The United States Court of Appeals for the Tenth Circuit, on its own motion pursuant to 10th Cir. R. 27.1, and pursuant to the provisions of The Uniform Certification of Questions of Law Act, N.M. Stat. Ann. §§ 39–7–1 to 39–7–13, and N.M.R.App. P. 12–607, desires to submit to the Supreme Court of New Mexico a request that the Court exercise its discretion to accept the following important certified questions of New Mexico law, which may be determinative of this case now pending in this court, and as to which it appears that there is no controlling precedent in the Supreme Court of New Mexico:

(1) Under New Mexico law, does a mineral rights lessee, by virtue of a Communitization Agreement to which the mineral rights lessee is a party, gain a right of access over the surface estate of the unitized portion of the leased area in connection with operations on other premises or lands pooled or unitized therewith where the lease did not expressly grant this right?

(2) Under New Mexico law, does a mineral rights lessee, by virtue of a Communitization Agreement to which the mineral rights lessee is a party, gain a right of access over the surface estate of the non-unitized portion of the leased area in connection with the production and extraction of minerals on other premises or lands pooled or unitized therewith where the lease did not expressly grant this right?

## I.  BACKGROUND

This case arises from a dispute over access to a gas well.  The Kysar family owns a ranch on the Animas River in San Juan County, New Mexico.  Amoco is the lessee under various mineral leases of mineral estates under the Kysars' ranch as well as to lands owned by the Bureau of Land Management, adjacent to and just north of the Kysars' property.  Several oil and gas wells drilled and operated by Amoco are on these properties.  This litigation centers around one Amoco well, the Sullivan Gas Com E Well (the "Sullivan E well" or "the well").  *See* attached schematic (Att.1).  The well is located on BLM land that is part of a unit that also includes minerals under the Kysars' surface estate.  Both the BLM land and a portion of the Kysars' land, are subject to a 1992 joint development agreement with the federal government.

The Kysars filed this tort action against Amoco in New Mexico state court.  Amoco removed the case to federal court pursuant to 28 U.S.C. §§ 1331 and 1441(b).  The Kysars' complaint alleges that Amoco's use of the Kysars' roads in order to operate and service the Sullivan E well constituted unlawful trespass and unfair trade practices under New Mexico law.  The Kysars did not seek certification to the New Mexico courts to resolve this issue of state law.

The parties filed cross motions for summary judgment.  The district court granted Amoco's motion for summary judgment.  The district court found that the Kysars had not shown facts sufficient to sustain a trespass claim.  The district court reasoned that Amoco, as the lessee of the mineral rights of all the lands at issue, was entitled to reasonable use of the Kysars' surface land in order to operate its well, although the Sullivan E well is situated on BLM land.

The district court determined that Amoco's entry into a 1992 communitization agreement with the United States authorized Amoco to cross the Kysars' property covered by the agreement to gain access to the Sullivan E well.  The district court also found that the 1992 agreement entitled Amoco to cross the Kysars' property via two separate roads that cross the Kysars' ranch.

### A.  Factual Background

The facts of this case are not in dispute.  The lawsuit concerns Amoco's access to the Sullivan E Well, which is part of the "Fruitland" coal seam gas formation, one of many geologic mineral formations underlying both the Kysars' land and the BLM land.  The Sullivan E well is located on a tract of BLM land, adjacent to the Kysars' ranch.

The Kysars purchased their ranch in 1983, subject to a reservation of previously leased oil, gas and other minerals, "with right of ingress and egress for removal of the[ ] same."  Aplts' App. 158 (Warranty deed dated May 14, 1956).  In addition, the conveyance was subject to all easements of record for pipe and pipe lines, roads and rights of way passage and other easements.  *See id.*  The conveyance was also subject to a right of way granted in 1954 to the Southern Union Gas Company for the purpose of constructing a road to and from Southern Union's "contemplated well location."  Aplts' App. at 41 (Right of Way Grant dated May 10, 1954).

Amoco is the successor-in-interest to the mineral rights underlying the Kysars' ranch and the BLM land.  Amoco's mineral rights under the Kysars' ranch are dictated under two substantively identical leases: the Keys lease that governs 344 northern acres of the Kysars' ranch, and the Jaquez lease that covers the remaining southern portion of the ranch.

The Keys and Jaquez leases were signed in 1948. In 1953, the Keys and Jaquez leases were amended to provide that the mineral rights lessee (i.e., Amoco's predecessor-in-interest), at its option, and without the surface owners' "joinder or further consent," could pool and unitize the leasehold estate with any other land or lease covering adjacent lands. Aplts' App. at 39 (Amendment to Oil and Gas Lease, dated June 10, 1953); *see also* Supl.App. doc. 4 at 2 (Amendment to Oil and Gas Lease, dated June 15, 1953) (same).

Specifically, the amendments gave the mineral rights lessee:

the power and right, at any time during the term of this lease, as to all or any part of the land ... and as to any one or more of the formations thereunder and the oil, gas and all by-products therein or produced therefrom, at its option and without Lessor's joinder or further consent, to pool and unitize the leasehold estate and the Lessor's royalty estate created by this lease with the rights of any third parties in all or any part of the land ... and with any other land, lands, lease, leases, oil, gas, and all by-products therein, and royalty rights, or any of them, adjacent, adjoining or located within the immediate vicinity of the land covered by this lease, whether owned by Lessee or some other person, ... so as to create such pooling and unitization, one or more drilling or production units. Each such drilling or production unit shall not exceed 320 acres.

Aplts' App. at 39; Supl.App. doc. 4 at 10 (same). In the amendment, the parties also

agreed that the commencement, drilling, completion of or production from a well, or any portion of a unit created hereunder, shall not have the effect of continuing this lease in force insofar as it covers the land not included within such unit, and no unit shall be created which covers and includes land in more than one Section.

Aplts' App. at 39; Supl.App. doc. 4 at 10 (same). Amoco, as the successor to the rights of the original mineral lessee, retains these rights.

In 1992, Amoco entered into a communitization agreement that committed 36.84 acres that Amoco held under the Keys lease to a joint development project with several other tracts of land. As the attached schematic indicates, the 36.84 acres constitute a relatively small segment of the Kysars' ranch. The communitization agreement covered the Fruitland coal gas seam geologic formation underlying the specified tracts. Pursuant to 30 U.S.C. § 226(j), the federal government approved the communitization agreement with Amoco and the other signatories.

In considering where to locate the Sullivan E well, Amoco approached the Kysars about placing the well within the boundaries of the 36.84 acres of the Kysars' ranch that are subject to the communitization agreement. None of the six wells on the Kysars' ranch are on the communitized property. After the Kysars indicated that they did not want the Sullivan E well on their land (because it would hinder their cultivation of alfalfa), Amoco drilled the well on BLM land.

Two private roads access the Sullivan E well: (1) the north branch road that crosses the Kysars' property held under the Keys lease and includes a suspension bridge ("bridge road") and (2) the longer branch road that crosses both Keys and Jaquez lease property ("back gate road"). Amoco acceded to a request by the Kysars that Amoco not use the bridge road, based on the Kysars' fear that the bridge could not sustain heavy equipment. Amoco maintains that although it has thus far been able to limit itself to using the less

convenient back gate road, it nevertheless has the right to use both roads to access the Sullivan E well.

In 2000, the Kysars negotiated a right of way with Coleman Oil, another oil company, that planned to drill a well on BLM lands within the communitized unit. In exchange for the right of way, the Kysars receive 2.5% of the overriding royalty on all production from the new well, plus various payments for improvements and maintenance on the roads.

### B. The District Court's Findings

Before the district court, the Kysars argued that (1) the communitization does not authorize Amoco to cross the portion of their ranch contained within the communitized area to access the Sullivan E gas well on the adjacent BLM land; (2) Amoco is not entitled to cross the non-communitized portion of the Kysars' ranch via the bridge road; and (3) Amoco is not authorized to cross the southern portion of the Kysars' ranch, via the back gate road. The district court rejected each of these arguments, relying largely on case law from others jurisdictions.

First, the district court determined that the communitization agreement granted Amoco the right to access the Sullivan E well by crossing that portion of the Kysars' surface estate overlying the communitized formations. The district court concluded that, by virtue of the oil and gas leases and the later communitization agreement, a mineral rights lessee could use the surface area of the lease to access and develop a well located on a nearby tract owned by others even where the lease did not expressly grant this right. The district court determined that the communitization agreement affected " 'both the *lands* described as being committed to the communitization area and each *lease* committed to the agreement.' "

Aplts' App. at 236 (quoting *Wolff v. Belco Dev. Corp.*, 736 P.2d 730, 733 (Wyo.1987) (emphasis in original)). "If production anywhere in a unit is considered to be production from each tract, then each surface tract within a unit is subject to the right of reasonable ingress and egress by lessees ... [to] extract[ ] minerals from the unit." *Id.* at 234. The lease in this case, unlike in the lease before the Wyoming Supreme Court *Wolff*, contains a Pugh clause.

Second, the district court also determined that Amoco is entitled to use both the bridge road and back gate road for its access to wells on the Kysars' ranch and for access to the Sullivan E well. The court found that because the "communitization agreement ... 'modifies and changes' the Keys lease," *id.* at 238, access should be unrestricted. The court continued, " 'if any acreage within [a] lease is unitized with a producing well, the surface of the leased tract may be used to transport production from the unit well.' " *Id.* (quoting *Acree v. Shell Oil Co.*, 548 F.Supp. 1150, 1154 (M.D.La.1982), *aff'd*, 721 F.2d 524 (5th Cir.1983)).

The district court recognized that the lease at issue in *Acree* specifically provided for access to the surface lands not covered by a unitization agreement, and that the Keys lease and the 1953 amendment lacked any language regarding transport over non-unitized or unitized surfaces of the lease. However, the district court stated that even with the omission of specific language, "the result should nevertheless be the same." *Id.* The court noted that "[t]his right is, as always, subject to Amoco's duty of reasonable and non-negligent surface use, so that any danger to the bridge would have to be taken into account." Aplts' App. at 241 n. 2. In making this finding, the court relied on *Amoco Production Co. v. Carter Farms Co.*, 103

N.M. 117, 703 P.2d 894 (1985), which held that "the mineral lessee[ ] is entitled to use as much of the surface area as is reasonably necessary for its drilling and production operations." *Id.* at 896.

Next, the court reasoned that the back gate road, which crossed land governed by the Jaquez lease, was also available for access by Amoco. Having found no errors in Amoco's access and use of the Kysars' land, the district court rejected the Kysars' allegations involving state tort claims for trespass, unjust enrichment, and a violation of the New Mexico Unfair Trade Practices Act.

## C. Issues on appeal

On appeal, the Kysars argue that the district court misconstrued and misapplied New Mexico law when it drew the above conclusions. Specifically, they contend that (1) the communitization agreement did not expand Amoco's rights to allow Amoco to access the surface of the communitized portion of the Kysars' ranch to develop the well; (2) the communitization agreement did not expand Amoco's rights to allow Amoco to access the surface of the non-communitized Kysars' ranch to develop the well; and (3) New Mexico law does not liberally construe implied easements.

## II. CONCLUSION

This court concludes that this proceeding involves important questions of state law under the statutes of New Mexico and that it is appropriate that the Supreme Court of New Mexico be afforded an opportunity to decide them. It appears that these questions may be determinative of the appeal now pending before this court and that there is no controlling precedent. Pursuant to N.M. Stat. Ann. § 39–7–7(A)(3), the New Mexico Supreme Court may reformulate these questions. This court accordingly concludes that it should submit these certified questions to the New Mexico Supreme Court. In its dis-

cretion, that court may answer the questions pursuant to Rule 12–607 of the New Mexico Rules of Appellate Procedure.

Therefore, the undersigned presiding judge of the panel submits this certification to the Supreme Court of New Mexico, in accordance with Rule 12–607 of the New Mexico Rules of Appellate Procedure. The Clerk of this court is directed to transmit a copy of this certification to counsel for all parties to the proceedings in this court. The Clerk shall also submit to the Clerk of the Supreme Court of New Mexico a certified copy of this certification order, together with copies of the briefs filed in this court, and either the original or a copy of the record as filed in this court by the Clerk of the United States District Court for the District of New Mexico. We greatly appreciate the consideration of this request.

The appeal is ordered STAYED pending resolution of the certified questions herein. As required by N.M. Stat. Ann. § 39–7–7(A)(4), the names and addresses of counsel are recorded above.