2008-NMSC-022

182 P.3d 121

**William F. McNEILL, Page McNeill, Marilyn Cates, and The Black Trust, Plaintiffs–Respondents,**

v.

**BURLINGTON RESOURCES OIL & GAS COMPANY, Defendant–Petitioner.**

**No. 30,162.**

Supreme Court of New Mexico.

April 3, 2008.

Hinkle, Hensley, Shanor & Martin, L.L.P., Thomas M. Hnasko, Gary W. Larson, Michelle R. Haubert–Barela, Santa Fe, NM, for Petitioner.

Butt, Thornton & Baehr, P.C., Emily A. Franke, Albuquerque, NM, Law Offices of James P. Lyle, P.C., James P. Lyle, Albuquerque, NM, for Respondents.

Miller Stratvert, P.A., Marte D. Lightstone, Kelsey D. Green, Albuquerque, NM for Amicus Curiae New Mexico Oil and Gas Association.

## OPINION

SERNA, Justice.

{1} We write, first, to clarify the proper measure of damages for negligent injury to a surface estate by a mineral lessee and, second, to analyze whether the discovery rule is applicable in the context of jurisdictional standing. We hold that evidence of the cost to repair damage to the surface estate by a mineral lessee's negligence may be relevant in analyzing the diminution in value of the property. The trial court's exclusion of the evidence of the cost to repair in the instant case was prejudicial and we therefore remand for a new trial. Whether an injury is characterized as permanent or temporary is no longer determinative of the proper measure of damages; rather, the jury should determine the most reasonable means of making the surface estate owner whole and, in doing so, may rely on evidence of the cost to repair and the diminution in value of the property. Only damage to the surface estate caused by the mineral lessee's unreasonable, excessive, or negligent use is actionable. The discovery rule is applicable in the jurisdictional standing context.

## I. FACTUAL BACKGROUND

{2} This matter arises from a dispute between the surface owners and the mineral lessees of a portion of real property over alleged surface damage to that property by the mineral lessees. Plaintiffs–Respondents William F. McNeill, Page McNeill, Marilyn Cates, and the Black Trust are the owners of the surface rights of the McNeill Ranch, a 31,000–acre non-contiguous cattle ranch in Lea County. Defendant–Petitioner Burlington Resources Oil and Gas Co. is the former oil, gas, and mineral lessee under a portion of Respondents' land.

{3} The relevant facts are undisputed. Petitioner's predecessor-in-interest, hereinafter also referred to as Petitioner, drilled an oil well on the McNeill Ranch in 1951. Petitioner constructed an open, earthen "reserve pit" to dispose of waste from the well, which is known as "produced water" and is composed of petroleum, hydrocarbons, salt water, and other contaminants. The well ceased production in 1986 and Petitioner closed the pit in 1992.

{4} Respondents contend that the manner in which Petitioner closed the pit was contrary to industry standards and resulted in subsurface contamination of their property. They filed suit on June 1, 1999, alleging negligence and trespass. They subsequently filed two amended complaints, the second of which added a claim for private nuisance.

## II. LEGAL BACKGROUND AND PROCEEDINGS BELOW

{5} Central to the ensuing litigation was the proper measure of damages to Respondents' land. Recognizing that *Amoco Production Co. v. Carter Farms Co.* occupies the field of the proper measure of damages to a surface estate by a mineral lessee in New Mexico, both Respondents and Petitioner rely heavily on it. *See id.,* 103 N.M. 117, 703 P.2d 894 (1985).

{6} In *Carter Farms,* a surface estate owner sued its mineral lessee for the lessee's refusal to restore a drilling site to its pre-drilling condition. *Id.* at 118, 703 P.2d at 895. While drilling and according to industry standards, the lessee had constructed a reserve pit to catch and hold the produced water resultant from the drilling. *Id.* at 118–19, 703 P.2d at 895–96. However, because there was water just below the surface area, the lessee had built the reserve pit partially above the surface of the ground with the assistance of caliche dikes. *Id.* at 118, 703 P.2d at 895. At the close of the drilling operation, the lessee began to level the pit area. *Id.* at 118–19, 703 P.2d at 895–96. Although the court found that it was customary to level the reserve pit and spread the organic waste about the ground in the manner attempted by the lessee, because of the lessee's use of the caliche dikes, its waste would have covered a greater amount of surface area than the typical operation. *Id.* at 119, 703 P.2d at 896.

{7} The surface rights owner brought suit against the lessee when the lessee refused to remove all of its debris from the site. *Id.* Although the trial court found that the lessee's clean-up method was reasonable and the jury found that the land used by the lessee was reasonably required, the jury still awarded the surface rights owner the cost of complete restoration of the reserve pit area. *Id.* at 118–19, 703 P.2d at 895–96. However, the trial court issued a judgment notwithstanding the verdict on the cost of restoration, refusing to award the cost of repair where the lessee's use had been reasonable. *Id.* at 118, 703 P.2d at 895. The Court of Appeals reversed the trial court and held that, even where the use of the surface is reasonable, the lessee must either restore the surface estate to its original condition or pay the costs to do so. *Id.* at 118, 120, 703 P.2d at 895, 897. This Court reversed the Court of Appeals and affirmed the trial court's judgment notwithstanding the verdict. *Id.* at 118, 703 P.2d at 895.

{8} While declining to imply a duty of restoration in *Carter Farms,* we adopted a framework for measuring the damages to a surface estate by a mineral lessee. *Id.* at 120–21, 703 P.2d at 897–98. We held that, where the damage was permanent, the proper measure of the surface owner's damages was the diminution in value, defined as the "difference between the fair market value of the land prior to the injury and the fair market value of the land after the full extent of the injury has been determined." *Id.* On the other hand, where the damage to the surface estate was merely temporary and could be repaired, we held that the proper measure of damages was the cost of repair or restoration, provided that the cost of repair did not exceed the value of the property. *Id.* at 121, 703 P.2d at 898. It is this framework that we revisit today.

{9} In the instant case, Petitioner argued before the trial court that the alleged damages to Respondents' land were permanent and that, under *Carter Farms,* the damages should be measured solely in terms of the diminution in value of the affected property. *See id.* at 120–21, 703 P.2d at 897–98. Respondents, though somewhat inconsistently, likewise maintained that the damage to their property was permanent. Nevertheless, they sought to introduce evidence of the cost of repairing the damage as a proxy for measuring the diminution in value. However, because Respondents had not alleged that the damage to their land was temporary, Petitioner moved, on the basis of *Carter Farms,* to exclude Respondents' proffered expert testimony on the cost to repair the damage to the land. *See id.* at 121, 703 P.2d at 898. The court granted Petitioner's motion and determined that, per *Carter Farms,* the proper measure of damages was the diminution in value of the land and that any evidence or reference to other measures of damages, viz. the cost to repair, was inadmissible. *See id.* at 120–21, 703 P.2d at 897–98. The trial proceeded with Respondents precluded from presenting any evidence of the cost to repair, evidence comparing the cost to repair to the diminution in value, or evidence of what accommodation a reasonable purchaser would request when learning of the damage to the property.

{10} At the close of the jury trial, Respondents were awarded $135,000 on the theories of negligence and trespass, though they had

requested damages up to $1.4 million. The private nuisance claim was disposed of by a directed verdict. Respondents appealed, contending that the district court erred in ruling that, as a matter of law, the damage to the property was permanent and that *Carter Farms* barred the admission of all cost of repair evidence. *See id.* Rather, Respondents argued, whether the injury was permanent or temporary was a question of fact for the jury to decide. Respondents also argued on appeal that the court erred in directing a verdict for Petitioner on the private nuisance claim. Petitioner cross-appealed, arguing that the claims were waived by deed or, alternatively, were barred by the statute of limitations and that the Black Trust, alone among Respondents, had no standing.

{11} The Court of Appeals upheld the trial court on the private nuisance claim, declined to address whether the claims were waived by deed, concluded that there was substantial evidence to support the jury's finding that the claims were timely, and held that the Black Trust had standing. *McNeill v. Burlington Res. Oil & Gas Co.*, 2007–NMCA–024, ¶¶ 11, 15, 17, 40, 141 N.M. 212, 153 P.3d 46. As to the damages issue, it held that *Carter Farms* provided the proper framework to measure such damages and that the issue of whether damage to a surface estate was permanent or temporary was an issue of fact for the jury to determine. *Id.* ¶¶ 25, 29 Thus, the Court of Appeals would have the jury determine whether an injury was permanent or temporary and then, once that finding had been made, *Carter Farms* would be dispositive as to the proper measure: diminution in value or the cost to repair. *Id.* The Court of Appeals also held that the cost of repair could be relevant and thus admissible in analyzing the diminution in value for permanent damage to a surface estate. *Id.* ¶¶ 29, 30. Lastly, it held that the value of the entire property, rather than solely the affected portion, should be considered in awarding damages for diminution in value. *Id.* ¶ 36.

{12} We granted the petition for writ of certiorari to review the proper measure of damages for negligent injury to a surface estate by a mineral lessee and to consider whether the Black Trust has standing. The proper measure of damages for a negligence claim and standing are matters of law, which are reviewed de novo. *Sowder v. Sowder*, 1999–NMCA–058, ¶ 7, 127 N.M. 114, 977 P.2d 1034. We address each in turn.

## III. DISCUSSION

### A. The Proper Measure of Damages for a Negligence Claim Against a Mineral Lessee

#### 1. The Cost of Repair May Be Relevant in Analyzing the Diminution in Value

{13} The trial court excluded Respondents' evidence on the cost to repair because Respondents had characterized their injury as permanent and the trial court read *Carter Farms* as prohibiting all evidence of the cost to repair in analyzing the diminution in value of real property. *See id.*, 103 N.M. at 120–21, 703 P.2d at 897–98. However, the Court of Appeals held, and we agree, that the cost of repair may be relevant, and thus may be considered, in analyzing the diminution in value of real property in a negligence claim against a mineral lessee. *McNeill*, 2007–NMCA–024, ¶ 29, 141 N.M. 212, 153 P.3d 46.

{14} The issue is one of relevancy. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 11–401 NMRA. "[W]hatever naturally and logically tends to establish a fact in issue is relevant." *Wright v. Brem*, 81 N.M. 410, 413, 467 P.2d 736, 739 (Ct.App. 1970) (quoted authority omitted). With some qualifications, "[a]ll relevant evidence is admissible." Rule 11–402 NMRA.

{15} In a negligence claim against a mineral lessee by a surface estate owner, evidence of the cost to repair a property may have a tendency to make more or less probable an expert's testimony with regard to the market value of the land after the injury. *See* Rule 11–401. Where an expert has testified that the land was rendered valueless, for example, a defendant's contrary evidence that the cost of repair would be minimal

would be quite relevant in that it would make the expert's estimation of value less probable. On the other hand, a plaintiff's evidence that the cost of repair would indeed be sizable or even comparable to the original value of the property would buttress the expert's testimony that the land was valueless after the injury.

{16} Likewise, evidence of the cost of repair is relevant in those cases where it would be natural for a surface estate owner to use it as a proxy or a means to gauge the diminution in value of the property. In many cases, the cost of repair bears on the diminution in value because it *informs* the diminution in value. *See* 22 Am.Jur.2d *Damages* § 256 (2008) ("The diminution in market value of a piece of real estate is often measured by the cost of repairing the injury ... or the depreciation of market value may be indicated by the cost of repair."). The cost of repair and the diminution in value of real property are closely related concepts. For example, when a potential homebuyer discovers that the prospective purchase needs a repair at a cost of five thousand dollars, the homebuyer will likely perceive the value of the property to be reduced by the cost of repair and offer the seller only the diminished value.

{17} Here, Respondents attempted to use evidence that the cost of repair was $1.2 million in order to buttress their claim that, because its pre-injury value was $1.4 million, the land was rendered essentially valueless by the lessee's damage. Respondents thus attempted to use evidence of the cost to repair to substantiate, or make more probable, their claims about the degree of diminution in value. *See* Rule 11–401. We agree with the Court of Appeals and Respondents that the evidence of the cost to repair was relevant insofar as it had a tendency to make more probable the Respondents' claim that their land was rendered valueless by the lessee's damage, a fact of consequence to the determination of the action. *Id.; see McNeill,* 2007–NMCA–024, ¶ 29, 141 N.M. 212, 153 P.3d 46. *Carter Farms* adopted a framework for measuring damages; it is not authority for what evidence is relevant in assessing those damages. We conclude that evidence of the cost to repair may be rele-

vant in analyzing the diminution in value and we affirm the Court of Appeals in so holding.

■ {18} Petitioner argues that the Court of Appeals' decision restricts the gatekeeper function of the trial court when it comes to admitting evidence. Our decision to uphold the Court of Appeals does nothing to impinge on the discretion of the trial court: holding that evidence of the cost to repair *may* be relevant to a diminution in value theory does not tie the hands of the trial court. We reject any reading of the Court of Appeals' opinion or of our opinion today that would mandate any brightline rule with regard to relevancy of evidence. Rather, questions of evidence are to be decided on a case-by-case basis. *Ohlson v. Kent Nowlin Constr. Co.,* 99 N.M. 539, 542, 660 P.2d 1021, 1024 (Ct.App.1983). We merely hold that the cost of repair shall not be excluded when relevant simply by virtue of the *Carter Farms* framework.

{19} Neither does our decision implicate any of our case law governing the reliability of expert testimony. *See, e.g., Lee v. Martinez,* 2004–NMSC–027, ¶ 18, 136 N.M. 166, 96 P.3d 291 ("[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." (alternation in original) (quoted authority omitted)). Both Petitioner and Amicus, the New Mexico Oil and Gas Association, contend that the Court of Appeals' opinion relaxes the standards for scientific and technical expertise required for expert testimony. But Petitioner and Amicus err in their interpretation of the Court of Appeals' opinion. Neither the Court of Appeals nor this Court express any opinion with regard to the qualification of the particular experts proffered by Respondents; that issue is not before us. In holding that testimony regarding the cost of repair may be relevant in a diminution analysis, we simply do not touch issues of expert qualification.

**2. The Trial Court Committed Reversible Error in Not Admitting Evidence of the Cost to Repair**

■ {20} The Court of Appeals held that the trial court's exclusion of the Respondents' evidence of the cost to repair prejudiced the Respondents and therefore

amounted to reversible error. *See McNeill,* 2007–NMCA–024, ¶¶ 19, 29, 30, 37, 41, 141 N.M. 212, 153 P.3d 46. We agree.

{21} "A party is entitled to have the jury instructed upon all correct legal theories of his case which are pleaded and supported by evidence, and a failure by the trial court to so instruct constitutes reversible error." *Stephens v. Dulaney,* 78 N.M. 53, 55, 428 P.2d 27, 29 (1967), *overruled on other grounds by Williamson v. Smith,* 83 N.M. 336, 341, 491 P.2d 1147, 1152 (1971). To warrant reversal, error must be prejudicial. *State v. Ranne,* 80 N.M. 188, 189, 453 P.2d 209, 210 (Ct.App.1969); *see also* Rule 1–061 NMRA; Rule 11–103(A) NMRA.

{22} Here, Respondents sought to have the evidence of the cost of repair admitted in order to more precisely measure the alleged diminution in value of their land resultant from Petitioner's damage. They argued that "the surface estate value ha[d] been affected ... by the amount of money it [would] cost to restore the estate by removal and replacement of the contaminated material." The cost of repair was relevant because, Respondents argued, the contamination had made the land valueless to any potential buyer and the land would continue to be valueless until the contamination was removed. Thus, Respondents' theory of the case was that the value of their land was diminished by the cost of repairing the damage alleged to have resulted from Petitioner's negligence. There existed a significant relationship between the cost of repair and the diminution in value in Respondents' theory of the case; furthermore, the issue of the quantification of damages was paramount in the litigation. As a result of the trial court's ruling excluding evidence of the cost to repair, Respondents were unable to substantiate the amount of damages that they requested, which prejudiced the presentation of their case. *See Ranne,* 80 N.M. at 189, 453 P.2d at 210. Respondents' substantial right to present their case was affected and the trial court therefore committed reversible error. *See* Rule 1–061; Rule 11–103(A); *Stephens,* 78 N.M. at 55, 428 P.2d at 29. We uphold the Court of Appeals and remand for a new trial consistent with this opinion.

### 3. The Permanent/Temporary Distinction is No Longer Useful in Analyzing Damages to a Surface Estate By a Mineral Lessee

{23} Having held that evidence of the cost of repair may be relevant and thus admissible in analyzing the diminution in value of real property, we next consider the continuing viability of the *Carter Farms* framework for damages that drew such an artificial distinction between the concepts of permanent and temporary.

{24} As the Court of Appeals recognized, "the distinction between permanent and temporary damages is often problematic." *McNeill,* 2007–NMCA–024, ¶ 27, 141 N.M. 212, 153 P.3d 46. Although the difference between permanent and temporary seems straightforward and clear-cut, the distinction is, in reality, imperfect. The line between permanent and temporary is obscure; the dichotomy "has not always been considered helpful, because the classification of the injury often turns on whether the cost of restoration is more than the value of the property." 22 Am.Jur.2d *Damages* § 257. As the Court of Appeals aptly noted:

> [P]ermanency is a word of art that stands for policy concerns rather than a simple physical description; the damages appear to be as permanent in some of the cases allowing repair-costs as they are in the cases limiting the damages to the diminution measure.... [C]ourts appear to describe harm to land as permanent in this sense when the cost of repair would be likely to exceed the diminished value by a substantial margin.

*McNeill,* 2007–NMCA–024, ¶ 28, 141 N.M. 212, 153 P.3d 46 (alternations in original) (quoted authority omitted).

{25} Given the mutable nature of the notions of permanent and temporary, and the fact that either concept may be relevant when analyzing the other, the artificial distinction and rigidity embodied by the *Carter Farms* dichotomy is no longer useful. Rather, the instant case is an example of the confusion that the *Carter Farms* framework engenders; where evidence of the cost to

repair was clearly relevant in assessing the degree of diminution in value, the trial court and Petitioner read *Carter Farms* to absolutely prohibit all evidence of the cost of repair when analyzing the diminution in value. Thus, *Carter Farms'* inflexible characterization constitutes a disservice to parties, rather than a useful tool. Today we retire the rigid and unworkable permanent/temporary dichotomy laid out in *Carter Farms* in favor of a more helpful rule.

{26} Once we reject the *Carter Farms* permanent/temporary dichotomy, the obvious question is what will replace it. As a preliminary matter, we note that UJI 13–1819 would direct that the correct measure of damages for injury to real property always be diminution in value. However, as our case law and the use notes to UJI 13–1819 make clear, this Court "has recognized that under certain circumstances the measure of damages to real property may vary." UJI 13–1819; *see, e.g., Ruiz v. Varan,* 110 N.M. 478, 481, 797 P.2d 267, 270 (1990); *Snider v. Town of Silver City,* 56 N.M. 603, 614, 247 P.2d 178, 185 (1952). As the Court of Appeals recognized, a negligence suit for damage to the surface estate by a mineral lessee is an instance where the proper measure of damages is not constrained by the guidelines set forth in UJI 13–1819. *See McNeill,* 2007 NMCA–024, ¶¶ 20–25, 141 N.M. 212, 153 P.3d 46.

{27} Thus, we turn to a more flexible standard than that established by *Carter Farms,* but one which remains faithful to the fundamentals of oil and gas and tort law. In assessing damages, the jury may consider the cost to repair or the diminution in value, without regard to whether the injury was permanent or temporary. The cornerstone of the inquiry will be reasonableness. The jury shall consider the "nature and extent of the injury and, in turn, the reasonableness of awarding the cost of repair versus the diminution in value." *McNeill,* 2007–NMCA–024, ¶ 29, 141 N.M. 212, 153 P.3d 46. The proper measure of damages will "depend on the proof offered to establish and quantify the harm." *Id.* ¶ 24 (quoted authority omitted). In either case, the cap on damages will be the diminution in value of

the property. *See* Am.Jur.2d *Damages* § 256 (noting that, where there is a considerable disparity between the amount of damages determined by the cost of repair and that by the diminution in value, the two measures may be reconciled by only awarding the cost of repair where it is less than the diminution in value). In rejecting the *Carter Farms* dichotomy in favor of a more general reasonableness measure, we aim to simplify the negligence theory of liability for injury to real property by a mineral lessee and advance the fundamental goal of making injured parties whole. *See Hood v. Fulkerson,* 102 N.M. 677, 680, 699 P.2d 608, 611 (1985) ("The general theory of damages is to make the injured party whole." (citation omitted)).

{28} Petitioners fear that the door to windfalls will be open to Respondents because they will be allowed to recover the cost of repair—in an amount just less than the total value of the ranch—from all historical oil and gas operators. However, Petitioners overlook the fact that the cost of repair was a measure of damages available to surface owners from the time of *Carter Farms;* our holding today does not make windfalls any more probable than they previously were. *See id.,* 103 N.M. at 120–21, 703 P.2d at 897–98.

{29} Additionally, by emphasizing reasonableness, we entrust the jury to award the most reasonable means of making the Respondents whole. *See Britton v. Boulden,* 87 N.M. 474, 475, 535 P.2d 1325, 1326 (1975) ("It must be presumed that the jury understood and complied with the court's instructions." (citations omitted)). The jury is the factfinder; we are confident that when directed to fashion an award of damages by the most reasonable measure available, a properly instructed jury will recognize sham claims and avoid awarding windfalls. Holding that evidence of the cost of repairs is relevant to diminution in value does not make the jury's task with regard to fashioning reasonable awards any more arduous than it previously was.

{30} Regarding diminution in value, we affirm the Court of Appeals' holding that the proper vehicle for comparison of the pre-

and post-negligent injury values is the property as a whole, rather than just that portion of the property affected by damage. *McNeill,* 2007–NMCA–024, ¶ 36, 141 N.M. 212, 153 P.3d 46. The Court of Appeals adeptly pointed out that "[i]f the injury is only to a small portion of land within the property, as in the present case, then the diminution in value of the entire property will take into account the degree or amount of injury." *Id.*

### 4. Only Damages Due to a Mineral Lessee's Unreasonable, Excessive, or Negligent Use of a Surface Estate are Compensable

{31} We do not agree with Petitioner's characterization of the Court of Appeals' opinion; namely, that by requiring that the cost of repair always be considered, it creates an implicit duty of restoration on the part of mineral lessees. Petitioner reads the Court of Appeals' opinion too broadly. The Court of Appeals did not mandate the introduction of evidence of the cost to repair. It clearly used permissive language: "evidence regarding cost of repair *may* be quite helpful in determining the diminution in value . . . ." *Id.* ¶ 36 (emphasis added). Neither the Court of Appeals nor this Court hold that the cost to repair is always relevant when analyzing the diminution in value. We simply hold that, in certain circumstances, it *may* be.

■■■■■ {32} Further, the essence of *Carter Farms* remains intact insofar as we again decline to recognize an implied contractual duty for all mineral lessees to completely restore the surface estate following drilling operations in the absence of negligence or an express contractual provision otherwise. *See id.,* 103 N.M. at 120, 703 P.2d at 897. *Carter Farms* reaffirmed the fundamental tenet of oil and gas law that a mineral lease carries with it the right to use as much of the surface area as is reasonably necessary to extract the minerals below. *Id.* at 119, 703 P.2d at 896; *see also Kysar v. Amoco Prod. Co.,* 2004–NMSC–025, ¶ 24, 135 N.M. 767, 93 P.3d 1272 ("[W]hen a thing is granted[,] all the means to obtain it and all the fruits and effects of it are also granted." (quoted authority omitted)); 1 Howard R. Williams &

Charles J. Meyers, Oil and Gas Law, § 202.2 (2007). The surface estate is subservient to the mineral estate. *Bolack v. Hedges,* 56 N.M. 92, 95, 240 P.2d 844, 846 (1952). Because the mineral lessee is entitled to use as much of the surface area as is reasonably necessary for extraction, it is not liable for damages resulting from such reasonable use. *See Carter Farms,* 103 N.M. at 119, 703 P.2d at 896. The owner of the mineral estate need not return the surface to its pre-drilling condition. *Id.* at 120, 703 P.2d at 897.

■■■■ {33} Thus, in order to prevail on a negligence claim, "[d]amage to the surface estate by the owner of the mineral estate [must be] founded upon the unreasonable, excessive or negligent use of the surface estate." *Id.; cf. Dean v. Paladin Exploration Co., Inc.,* 2003–NMCA–049, ¶ 14, 133 N.M. 491, 64 P.3d 518 (holding that, where contract expressly provides for lessee's liability for all damage to surface estate, negligence is not required for plaintiff to recover for damages). We emphasize the paramount significance of the essence of *Carter Farms:* damage to the surface estate caused by a lessee's reasonable use is not actionable. *Id.,* 103 N.M. at 120, 703 P.2d at 897.

■■■■ {34} While it seems elementary to emphasize that damages giving rise to a negligence suit must be alleged to result from a breach of the mineral lessee's duty, after surveying the record and the proceedings below, we nevertheless feel compelled to do so because the parties have not differentiated between those damages alleged to have resulted from negligence and those damages resulting from Petitioner's reasonable use of the surface estate. However, in a negligence claim by a surface estate owner against a mineral lessee, the parties and the courts must draw a distinction in the evidence between the damages caused by the lessee's reasonable use, which are not actionable, and those damages to the surface estate caused by the lessee's alleged negligence, which are actionable.

{35} To reiterate, the cost of repair may be relevant when analyzing the diminution in value of a piece of real property resultant from a mineral lessee's negligence. In the

instant case, the trial court's exclusion of such evidence prejudiced Respondents and constitutes reversible error. *Carter Farms'* permanent/temporary dichotomy is no longer useful or viable when assessing damages to real property. Instead, juries may consider the cost of repair and the diminution in value, without regard to whether the injury is characterized as permanent or temporary. Finally, only those damages alleged to have resulted from a lessee's unreasonable, excessive, or negligent use are actionable in a negligence claim.

### B. The Black Trust Has Standing to Bring Its Claims

 {36} Petitioner appeals the trial court's denial of its motion for directed verdict with regard to the standing of the Black Trust. Petitioner argues that the Black Trust, alone among Respondents, does not have standing because the cause of action arose when the pit was covered over and abandoned, which was prior to the Black Trust gaining an ownership interest in the McNeill Ranch. Since the previous owner did not expressly convey the cause of action to the Black Trust, Petitioner argues, substantially under Texas law, that the Black Trust has no standing to bring its claims. We review the district court's denial of a motion for directed verdict de novo. *Hedicke v. Gunville*, 2003–NMCA–032, ¶ 9, 133 N.M. 335, 62 P.3d 1217.

{37} In New Mexico, a cause of action arises when "the plaintiff discovers or with reasonable diligence should have discovered that a claim exists." *Williams v. Stewart*, 2005–NMCA–061, ¶ 12, 137 N.M. 420, 112 P.3d 281 (quoted authority omitted); *see also* NMSA 1978, § 37–1–7 (1880, as amended through 1953) ("the discovery rule"). The Black Trust received its interest in the McNeill Ranch in 1997. Respondents contend that they discovered the contaminated pit in 1997. As the Court of Appeals held, a motion for directed verdict that the Black Trust had no standing was inappropriate because there was a factual issue with regard to the timing of the discovery of the injury. Applying the discovery rule to the evidence presented, "the causes of action accrued, or

was [sic] 'discovered,' after the conveyance of the property to [Respondents]." *McNeill*, 2007–NMCA–024, ¶ 15, 141 N.M. 212, 153 P.3d 46. We affirm the Court of Appeals' holding that the discovery rule applies and that the Black Trust has standing.

### IV. CONCLUSION

{38} We conclude that evidence of the cost to repair damage to the surface estate by a mineral lessee's negligence may be relevant in determining the diminution in value of the property. The trial court's exclusion of the cost to repair in the instant case prejudiced Respondents and we therefore remand for a new trial. The proper measure of damages in a negligence claim against a mineral lessee no longer centers on whether the injury is characterized as permanent or temporary. Rather, the jury should determine the most reasonable means of making the surface estate owner whole and may rely on evidence of the cost to repair and the diminution in value. However, only damage to a surface estate caused by a mineral lessee's unreasonable, excessive, or negligent use is actionable. The Black Trust has standing to bring its claims against Petitioners.

{39} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PETRA JIMENEZ MAES, RICHARD C. BOSSON, Justices, and RICHARD E. RANSOM, J. Pro Tem.