**278 P.2d 571**

**TIDEWATER ASSOCIATED OIL COM-PANY, a Corporation, Plaintiff-Appellant,**

**v.**

**E. D. SHIPP, Defendant-Appellee.**

**No. 5779.**

Supreme Court of New Mexico.

Dec. 29, 1954.

Edwards & Reese, Hobbs, for appellant.

G. T. Hanners and Howell Spear, Lovington, for appellee.

McGHEE, Chief Justice.

This action was filed by the appellant seeking an injunction against the appellee's interference with its attempt to go upon lands belonging to the state of New Mexico on which the appellee held grazing leases, for the purpose of doing seismographic work. The appellant owned oil and gas leases in the vicinity, but the mineral leases on the lands upon which appellee held his grazing leases were owned by others.

Appellant based its right to go onto the lands in question upon the written consent of the Commissioner of Public Lands of New Mexico and of the owners of the various mineral leases, the consent of the latter being conditioned upon appellant holding them harmless because of damages inflicted upon the cattle, ranch, improvements, etc., upon such lands.

The appellant alleged its ownership of mineral leases in the vicinity, the permission of the state and the owners of other leases above set out, and its right to enter upon the lands and conduct the tests. A restraining order was issued, the seismographic work was done and thereafter the appellee filed his pleading denominated answer and cross complaint. He did not deny any of the matters set out in the complaint, but asserted he had been damaged by reason of the activities, as follows:

"2. That during its operations upon said lands the plaintiff drilled 51 shot holes upon said lands and traveled back and forth across said lands with numerous drilling rigs, power wagons, trucks and other vehicular equipment, and disturbed and interrupted the defendant's ranch operations on said lands and the defendant's livestock thereon, and lessened the value of the use of said lands for ranching and grazing purposes, and damaged defendant's ranges, livestock, growing crops and improvements, to the *plaintiff's* damage in the sum of $1,275.00."

The appellant answered the cross complaint setting up it failed to state facts upon which relief could be granted. It again pleaded the permission given it by the commissioner and the owners of the mineral leases, setting forth the following provision in the grazing lease issued by the commissioner to appellee:

"The right is hereby expressly reserved by the Commissioner, to execute leases for the above lands for mining purposes, or the extraction of petroleum, natural gas, salt, and other deposits therefrom, and right to sell and dispose of the same. The right is also reserved to grant rights-of-way and easements over, across or upon the land embraced in this lease for public highways, power lines, irrigation works, mining, logging, pipe line, business leases, water leases, and other purposes."

In addition, the appellant plead the following by way of estoppel:

"3. That having accepted the lease to said lands containing the reservation in the Land Commissioner of the right to grant rights of way and easements for mining and other purposes and occupying said lands for grazing purposes pursuant to said lease, defendant is estopped and barred from denying the right of the Land Commissioner to grant such easements and rights of way and is barred and estopped from denying plaintiff right under such easement and right of way to go upon said lands and conduct its seismographical survey and that defendant is barred and estopped from asserting any claim from damages resulting for plaintiff's exercise of the right observed by defendant's landlord and by defendant's landlord granted to plaintiff."

On motion of the appellee an advisory jury was called to determine the damages which returned a verdict in favor of the appellee for $800. The trial court adopted the verdict of the jury, made findings of fact and conclusions of law and then entered judgment on the verdict.

Many assignments of error are made because of instructions given, as well as the refusal of certain tendered instructions by appellant, and the denial of its motion to dismiss appellee's cross complaint, but they can be disposed of without a discussion of each claimed error.

The appellant contends that because of the reservation in the grazing lease and the decision of this court in Lea County Water Co. v. Reeves, 1939, 43 N.M. 221, 89 P.2d 607, it may only be held liable for damages resulting from its negligence or excessive use of the privilege conferred on it to exercise; that it was not claimed either existed.

It is further urged that even if appellant be liable, the damages awarded were excessive.

The doing of geophysical or seismographic work has become an inseparable part of oil and gas discovery procedure. It is done ahead of the location of a well site and its drilling. The extent of the

work done and the resultant damage is reflected by finding of fact No. 7, as follows:

"That in conducting its geophysical exploration work upon said lands the plaintiff drilled 51 wells upon said land for the placing of dynamite therein and the detonation thereof in order to record on scientific instruments the reactions therefrom, and that in connection therewith the plaintiff used drilling rigs, power wagons, trucks and other vehicular equipment and travelled back and forth across said lands and disturbed the defendant's livestock which were grazing thereon and damaged the defendant's range, livestock and improvements; and that the verdict of the jury assessing said damages at the amount of $800.00 is reasonable."

The decision in the Lea County Water Co. case cited above was by a divided court, as shown by the dissent of Justice Brice on motion for rehearing (with which the writer agrees), and involved the laying of a pipe line for which the land commissioner had received a stated consideration. The writer was the trial judge and the judgment was reversed, although, as shown by what was said in the motion for rehearing, as well as in fact, the legal points in the case were never urged or considered below, it being agreed the sole question was one of damages. Unfortunately for the holder of the grazing lease, no record was made of such turn in the case, so it was decided here on the legal questions involved which, it is true, had been pleaded.

If the doctrine of the majority opinion in the Lea County Water Co. case is to be extended to seismographic work, in the face of legislative history and the present effective act, Ch. 18, Laws of 1931, then the judgment below must be reversed and the holder of a grazing lease denied damages to his grass, livestock, crops, etc., in the absence of proof of negligence or excessive use.

In the Lea County Water Co. case stress was placed on what are now sections 7-8-29 and 7-8-61, 1953 Comp., as follows:

§ 7-8-29: "In all leases of state lands for grazing or agricultural purposes there shall be inserted a clause reserving the right to execute leases for mining purposes thereon, or for the extraction of petroleum, natural gas, salt, or other deposit therefrom, and the right to sell or dispose of any other natural surface products of such lands other than grazing, agricultural or horticultural products; also a clause reserving the right to grant rights-of-way and easements for any of the purposes mentioned in section 5231 (7-8-61)."

§ 7-8-61: "The commissioner may grant rights-of-way and easements over, upon or across state lands for

public highways, railroads, tramways, telegraph, telephone and power lines, irrigation works, mining, logging and for other purposes, upon payment by the grantee or grantees of the price fixed by the commissioner, which shall not be less than the minimum price for the lands, used, as fixed by law."

These sections come from the 1912 Act, being Ch. 82. In the same act provision was made for a five percent royalty to the state.

By Ch. 98, Laws of 1919, provision was made for the leasing of land for mineral purposes for a term of ten years, with a one-eighth royalty on oil and gas. It was further provided such leases could be made on lands sold by the state where the minerals had been reserved, but required a bond from the lessee guaranteeing the payment of any judgment rendered against the owner of such mineral lease because of the use of and operations on the land by such lessee or his successors in interest. Provision was made for the filing of a waiver by the purchaser of the surface, in which event the bond would not be required.

Chapter 137 of the Laws of 1925 decreased the term of state oil and gas leases to five years, but provided the bond to the surface owner of state purchased land should be $2,000.

Chapter 125 of the Laws of 1929 gave us a comprehensive plan for the leasing of state lands for oil and gas purposes. This act clearly provided for oil and gas leases upon state lands which had been leased for grazing and agricultural purposes, giving to the holder of the grazing lease the same protection theretofore extended to the purchaser of the surface of state lands under § 12 thereof, which reads:

"Sec. 12. The commissioner is authorized to insert in the leases issued under the provisions of this act, such general provisions as are customary and proper for the protection of the rights of the state and of the lessees and of the owners of the surface of the leased lands and not inconsistent or in conflict with the provisions of this act and of other laws."

Presumably, such general provisions as were customary and proper were those protecting the purchaser of the surface of state lands.

By the enactment of Ch. 18 of the Laws of 1931, a form of oil and gas lease was adopted whether it covered purchase or grazing lease lands. Section 11 of such form provides:

"11. Lessee shall be liable and agrees to pay for all damages to the range, livestock, growing crops or improvements caused by lessee's operations on said lands. * * *"

This provision now appears as section 11 of the statutory form set forth in § 7–11–3, 1953 Comp., and has not been amended.

At the time of the passage of the 1931 act, geophysical or seismographic work was not being done in New Mexico, but, as above stated, it is now recognized as an important part of the discovery procedure for oil and gas. The appellant's right to go upon the lands in question is bottomed upon its ownership of nearby mineral leases and the consent of the commissioner, conditioned on securing the consent of the owners of the mineral leases on the lands upon which the appellee held grazing leases. These consents recognize liability might result for damages, and while the indemnity is only as to damages such mineral lease holders might have to pay, the language is significant. The holders of the mineral leases had the sole right to explore for oil and gas. When they, together with the commissioner, gave consent for the appellant to do such work, and when it went upon the lands thereby causing damage to the owner of the grazing lease, section 11 of the state oil and gas lease form, § 7–11–3, supra, became an integral part of such consent. Clearly, the owner of the grazing leases would have been protected if the holders of the mineral leases had done the work and caused the damage. The appellant here simply stepped into their shoes; otherwise, it would have been a mere trespasser.

We are unwilling to extend the doctrine of the Lea County Water Co. case beyond what was there involved—a right of way for a pipeline and its installation and upkeep—and we hold the appellee is entitled to reasonable damages.

The shot string extended for four and one-half miles and the work was in progress some eight days. Trucks ran up and down the line, according to the testimony, and as the soil was very dry, dust settled on the grass covering approximately a forty acre strip of the shot string. Its use for grazing was thereby lost until it rained and there was no rain for quite a time after the work was completed.

There was testimony the cattle were disturbed by the trucks being driven through them, in addition to the fact the trucks were on the ranch; that the cattle did not graze well during the period while the work was being done and that they lost weight on account thereof, to the damage of the appellee. There was also testimony the turf was damaged by the trucks driving back and forth and that the cattle had to go two miles to water because of the operations. In addition, there was testimony the cattle followed the trucks, but such action was caused by the practice of the ranch owner feeding them on the range from trucks, and for this item we hardly believe the appellant should be held liable. It is a habit the appellee taught the cattle, well knowing of the rights of the holders of the mineral leases. At and prior to the time the appellant was doing the work the appellee

was feeding the cattle, but he did no feeding during the time the work was in progress. This no doubt contributed materially to the damage of the cattle.

The appellant asserts the testimony as to the damages to the cattle is too vague and indefinite to support a finding on such account. We agree it is not as clear and precise as it might have been, but the appellee undoubtedly sustained damage by reason of the operation. After examining the evidence in the case we are of the opinion the sum of $200 will fairly compensate him for the allowable damages proved. There was no proof of damage to the improvements and that item should not have been submitted to the jury or considered by the trial court.

If the owners of the grazing leases will realize the limited estate they have as a matter of law in these grazing leases and be reasonable in their demands, and if the oil industry will recognize the rights of such grazing lease holders under the law, and if both will operate and deal with one another on a live-and-let-live basis, they can work in the development of their respective industries in the same territory without too much conflict.

The judgment will be affirmed on condition the appellee files a remittitur of $600 within fifteen days from the filing of this opinion; otherwise it will be reversed and the appellant granted a new trial on the question of damages only. In the event of affirmance the costs will be equally divided; otherwise they will be taxed against the appellee.

It is so ordered.

SADLER, COMPTON, and LUJAN, JJ., concur.

KIKER, J., not participating.