# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: July 28, 2015

**NO. 32,830**

**WOODY INVESTMENT, LLC and
PIPKIN CORPORATION**,

      Plaintiffs-Appellants/Cross-Appellees,

v.

**SOVEREIGN EAGLE, LLC and
DAWSON GEOPHYSICAL COMPANY**,

      Defendants-Appellees/Cross-Appellants.

**APPEAL FROM THE DISTRICT COURT OF DE BACA COUNTY
David P. Reeb Jr., District Judge**

Heidel, Samberson, Newell, Cox & McMahon
Michael Newell
Lovington, NM

for Appellants/Cross-Appellees

Cavin & Ingram, P.A.
Stephen D. Ingram
Albuquerque, NM

for Appellees/Cross-Appellants

Chatham Partners, Inc.
Karin V. Foster
Albuquerque, NM

for Amicus Curiae

**OPINION**

**VIGIL, Judge.**

{1}	This is a case that involves claims brought under the Surface Owners Protection Act (SOPA), NMSA 1978, §§ 70-12-1 to -10 (2007), and the common law as a result of geophysical seismic surveys conducted on lands owned or leased by Plaintiffs. The only claims that proceeded to trial were Plaintiffs' claims of negligence and trespass because the district court granted summary judgment on Plaintiffs' SOPA and breach of contract claims. The jury determined there was no liability for negligence and trespass, and Plaintiffs appeal from the summary judgments. We reverse. We also briefly address Plaintiffs' argument that the district court erred in not allowing their expert witness on damages to testify at the trial and Defendants' cross-appeal.

**BACKGROUND**

{2}	Sovereign Eagle, LLC (Sovereign) is a gas and oil operator that operates wells on lands owned by Woody Investments, LLC (Woody). Sovereign contracted with Dawson Geophysical Company (Dawson) to conduct geophysical seismic surveys in what is called the Tule Field in order to evaluate potential future oil and gas operations. The surveys were to be conducted on land that Woody and Pipkin Corporation (Pipkin) either owned or leased from the State Land Office.

{3} Pursuant to SOPA, Sovereign gave notice of the planned geophysical survey to Woody and Pipkin (Plaintiffs)[1] and when the parties were not able to agree on the terms of a surface use and compensation agreement, Sovereign posted a SOPA bond to enter upon Plaintiffs' lands and conduct the geophysical survey. *See* Section 70-12-5 (setting forth procedures required under SOPA before entry upon lands to conduct oil and gas operations, including advanced notice and requirements for negotiating a proposed surface use and compensation agreement that governs operations and compensation for damages to the surface); *see* Section 70-12-6 (stating that when no surface use and compensation agreement has been made, the operator may enter the surface owner's property and conduct oil and gas operations after posting a bond). In addition, Dawson obtained a permit from the State Land Office to conduct the geophysical survey.

{4} Dawson then entered Plaintiffs' lands and conducted the geophysical survey. In order to conduct the survey, cables and seismic equipment were laid on the surface by foot, ATVs, pickup trucks, and vibroseis trucks equipped with balloon tires. Geophysical seismic surveys generate, record, and analyze soundwaves that travel through the earth and are reflected back from the different types of rock below the

---

[1]Monte Best was also an original plaintiff, but he was dismissed as a party early in the litigation and did not participate in any further proceedings.

surface. The two main methods used to generate seismic waves are (1) the drilling of shot holes and the detonation of explosives placed in the holes, and (2) vibroseis. In this case, shot holes were not drilled and no detonating explosives were used. Where vibroseis is used, a line or grid of receivers, or geophones, is placed on the surface connected with cables for transmission of the data to a centralized vehicle. A vibroseis truck weighs 62,000 pounds and the truck's "terra tires" or balloon tires displace the weight of the vehicle to eighteen pounds per square inch. The soundwaves caused by the vibrations of the vibroseis truck bounce off geologic formations beneath the earth and return to the surface to be captured by the geophones. When the detailed images are combined with other information, geologists can map seismic geomorphology and reservoir quality. Dawson conducted a two-dimensional survey, in which seismic readings were taken from points laid down a straight line, as well as a three-dimensional survey, in which seismic readings were taken from points laid out in a grid.

{5}     After the survey was completed, Plaintiffs filed a complaint against Sovereign and Dawson (Defendants) seeking damages for negligence, breach of contract, violation of SOPA, and trespass. The district court granted summary judgment on the SOPA and breach of contract claims, and trial proceeded on the negligence and trespass claims. The jury found that Defendants were not liable on these claims.

Plaintiffs appeal from the summary judgments granted to Defendants on the SOPA and breach of contract claims. Plaintiffs also appeal from the order of the district court that barred Plaintiffs' expert from expressing his opinion on damages.

**DISCUSSION**

{6}     The standard we apply in reviewing an order granting summary judgment is well settled. "We review the district court's decision to grant summary judgment de novo. Summary judgment is appropriate where the facts are undisputed, and the movant is entitled to judgment as a matter of law. We review the facts in a light most favorable to the nonmoving party. Further, all reasonable inferences from the record should be made in favor of the nonmoving party. New Mexico courts view summary judgment with disfavor." *T.H. McElvain Oil & Gas Ltd. P'ship v. Benson-Montin-Greer Drilling Corp.*, 2015-NMCA-004, ¶ 19, 340 P.3d 1277, *cert. granted*, 2014-NMCERT-012, 344 P.3d 988 (alterations, internal quotation marks, and citations omitted). To the extent applicable, we discuss additional authorities and facts which pertain to each issue discussed.

**A.     The SOPA Claim**

{7}     The district court granted summary judgment on the SOPA claim based on its conclusion that "Defendants' geophysical survey is a non-surface disturbing activity as defined in SOPA §70-12-5(A) and not an oil and gas operation as defined in

SOPA" and therefore "Plaintiffs have no claim for damages under SOPA resulting from Defendants' geophysical survey." For the following reasons, we conclude that the district court erred as a matter of law by concluding that Defendants' geophysical seismic survey is not an "oil and gas operation" covered by SOPA.

{8} "Statutory interpretation is a question of law, which we review de novo." *First Baptist Church of Roswell v. Yates Petroleum Corp.*, 2015-NMSC-004, ¶ 9, 345 P.3d 310 (internal quotation marks and citation omitted). In interpreting a statute, our primary goal is to ascertain and give effect to the Legislature's intent. *Id.* "Under the rules of statutory construction, when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Id.* (alteration, internal quotation marks, and citation omitted). We look at the statute as a whole. *Id.*

{9} The purpose of SOPA is to balance surface owners' and mineral lessees' interests. SOPA aims to minimize damage and loss of available surface for agriculture caused by oil and gas operations, Section 70-12-4, to promote a fair negotiation process between the surface owner and the mineral lessee, Section 70-12-5, and to not delay exploration and development of minerals, Section 70-12-6.

{10} Before the enactment of SOPA, surface owners could only recover damage to the land if they had a contract with oil and gas operators that had an express

5

reclamation provision or if the oil and gas operators unreasonably, negligently, or excessively used the land. *See Amoco Prod. Co. v. Carter Farms Co.*, 1985-NMSC-071, ¶¶ 11-12, 103 N.M. 117, 703 P.2d 894, *abrogated by McNeill v. Burlington Res. Oil & Gas Co.*, 2008-NMSC-022, 143 N.M. 740, 182 P.3d 121. However, SOPA now imposes strict liability upon oil and gas operators for surface damage caused by oil and gas operations. Section 70-12-4 directs:

> A.     An operator shall compensate the surface owner for damages sustained by the surface owner, as applicable, for loss of agricultural production and income, lost land value, lost use of and lost access to the surface owner's land and lost value of improvements caused by oil and gas operations. The payments contemplated by this section only cover land affected by oil and gas operations.

> B.     An operator shall not be responsible for allocating compensation between the surface owner and any tenant, except that an operator shall compensate a tenant of the surface owner for any leasehold improvements damaged as a result of the operator's oil and gas operations if the improvements are approved and authorized by the surface owner. The compensation shall equal the cost of repairing or replacing the improvements.

> C.     An operator shall reclaim all the surface affected by the operator's oil and gas operations.

{11}     Defendants argue that geophysical seismic surveys are preliminary to actual oil and gas operations and therefore cannot be included within "oil and gas operations." Defendants' argument stems from the SOPA notice provisions that differentiate between "activities that do not disturb the surface," under Section 70-12-5(A), and

6

"oil and gas operations" outlined under the more extensive notice provision of Section 70-12-5(B). We agree that conducting a geophysical survey only requires five days notice under Section 70-12-5(A), but we do not agree that such a survey is excluded from SOPA's definition of "oil and gas operations."

{12}  The Legislature broadly defined "oil and gas operations" to include "all activities affecting the surface owner's land that are associated with *exploration*, drilling or production of oil or gas[.]" *See* § 70-12-3(A) (emphasis added). From our analysis of New Mexico and out-of-state statutes and case law, a geophysical seismic survey—whether it disturbs the surface or not—is an exploratory activity. "Exploration" is "[t]he search for oil and gas. Exploration operations include: aerial surveys, *geophysical surveys*, geological studies, core testing, and the drilling of test wells (wildcat wells)." Howard R. Williams & Charles J. Meyers, *Manual of Oil & Gas Terms* 331-32 (7th ed. 1987) (emphasis added).

{13}  Other states which have surface owner protection statutes also include geophysical seismic surveys within "exploration" and "oil and gas operations." *See* Okla. Stat. Ann. tit. 52, § 318.21(B)(1) (2012) (defining "seismic exploration" as "the drilling of seismograph test holes and use of surface energy sources such as weight drop equipment, thumpers, hydropulses or vibrators, and any of the activities associated therewith"); Mont. Code. Ann. § 82-10-502(5) (2013) (defining "oil and

7

gas operations" as "the exploration for or drilling of an oil and gas well that requires entry upon the surface estate . . . and the production operations directly related to the exploration or drilling"); Wyo. Stat. Ann. § 30-5-401(a)(iv) (2005) (defining "oil and gas operations" as "the surface disturbing activities associated with drilling, producing and transporting oil and gas, including the full range of development activity from exploration through production and reclamation of the disturbed surface").

{14}     In the limited New Mexico case law dealing with geophysical seismic surveys, our courts have used the terms "geophysical" or "seismic" surveys in the context of oil and gas exploration. For example, *Dean v. Paladian Exploration Co.*, 2003-NMCA-049, 133 N.M. 491, 64 P.3d 518, deals with surface damage caused by seismic explorations similar to the explorations that Dawson—who was also a defendant in *Dean*—conducted on the Woody property here. We used "geophysical operations" interchangeably with "seismic exploration" in *Dean*: "Defendant . . . obtained the authority to conduct geophysical operations . . . pursuant to certain seismic permits . . . . Dawson commenced seismic explorations in the fall of 1994." *Id.* ¶ 3. Also in *Dean*, like the present case, Dawson conducted a 3-D seismic survey and the Court referred to the survey as "3-D seismic exploration." *Id.* ¶ 4. The surface owners in *Dean* also experienced similar damages: "the tracks and dust created by

8

Defendants' trucks during the seismic exploration damaged his Blue Gramma grass[.]" *Id.* ¶ 17.

{15} Our case law has long accepted that geophysical seismic surveys are part of oil and gas exploration. *See Hondo Oil & Gas Co. v. Pan Am. Petroleum Corp.*, 1963-NMSC-204, ¶ 1, 73 N.M. 241, 387 P.2d 342 (The "defendant-appellee was granted the exclusive right . . . to conduct geophysical explorations[.]"); *Pinkerton v. Moore*, 1959-NMSC-051, ¶ 13, 66 N.M. 11, 340 P.2d 844 ("[T]he United States Congress in 1958, probably in recognition of modern exploration methods, enacted certain legislation which recognizes and allows geological, geochemical and geophysical surveys to be included as labor."); *Tidewater Associated Oil Co. v. Shipp*, 1954-NMSC-129, ¶ 10, 59 N.M. 37, 278 P.2d 571 ("The doing of geophysical or seismographic work has become an inseparable part of oil and gas discovery procedure.").

{16} Other states likewise classify geophysical seismic surveys as part of oil and gas exploration. *See Enron Oil & Gas Co. v. Worth*, 1997 OK CIV APP 60, 947 P.2d 610, 612 ("This is an appeal from an order denying the plaintiff's quest for an injunction to prevent surface owners from interfering with seismic exploration for minerals."); *Anschutz Corp. v. Sanders*, 734 P.2d 1290, 1291 (Okla. 1987) ("One who is engaged merely in the process of geophysical exploration may, as a result of that exploration,

9

determine not to drill at all."); *Roye Realty & Dev., Inc. v. S. Seismic*, 711 P.2d 946, 948 (Okla. Civ. App. 1985) ("[T]he respective rights of the lessor and lessee to conduct geological and geophysical exploration will depend on the provisions of the lease."); *Hunt Oil Co. v. Kerbaugh*, 283 N.W.2d 131, 136 (N.D. 1979) ("The [defendants], in support of their argument for denial of injunctive relief, offered affidavits and testimony indicating the damages they had sustained as the result of prior seismic exploration; that the present seismic activity was causing damage to their grain crop, pasture, and other farmland; and that they fear additional damage to property from further seismic activity."); *Ready v. Texaco, Inc.*, 410 P.2d 983 (Wyo. 1966) (referring to conducting "geophysical exploration" by the "seismographic method").

{17} Defendants argue that a classifying geophysical survey in the category of "oil and gas operations" under Sections 70-12-3(A), -4(A), and -5(B) would make no sense to the context of the activities actually occurring at the time. We disagree. Defendants confuse the purpose of the notice provision, which bifurcates non-surface disturbing and surface disturbing oil and gas activities, with SOPA's strict liability compensation provision. The notice requirements reflect the level of invasiveness of different oil and gas operations. Evaluative and exploratory activities require a lesser

10

notice standard while activities dealing with pipelines, construction, and drilling, for example, require alerting the surface owner to the more intense operations.

{18}     We hold that the geophysical seismic survey is an oil and gas operation under SOPA, which subjects Defendants to strict liability for statutory damages. We therefore reverse the district court and remand for trial of Plaintiffs' SOPA claim.

**B.     Breach of Contract Claims**

{19}     The breach of contract claims arise out of a lease from the State Land Office to Woody[2] and a permit granted to Dawson by the State Land Office. Pursuant to an agricultural lease with the State Land Office, Woody leases the surface of several tracts of land from the State Land Office, and the State Land Office reserves the right to execute leases "for the extraction of oil [and] gas" and "the right to go upon, explore for, mine, remove and sell same." The lease also provides that when such rights are granted, permittees must settle with and compensate the State Land Office surface lessees for damages specified in 19.2.17.15 NMAC that we discuss below. Dawson obtained a permit from the State Land office to conduct the geological seismic surveys on lands that included lands leased to Woody, and the permit also

---

[2]The lease is actually to the Dwain F. Woody Trust. However, Woody received an assignment of rights from the Dwain F. Woody Trust to pursue this litigation. In addition, only Woody sued as a state grazing lessee, not Pipkin.

requires Dawson to compensate State Land Office surface lessees such as Woody for the damages specified in 19.2.17.15 NMAC.

{20} Summary judgment was granted to Defendants on the breach of contract claims related to the leased lands on the grounds that: (1) Woody is not entitled to recover surface damages, which are only owed to the State; (2) while the leases entitle Woody to recover damages to the range, Woody did not plead such damages; (3) Mr. Woody is bound by his deposition testimony that he was not seeking damages for lands he was leasing from the State; and (4) Woody is not entitled to seek damages as a third-party beneficiary to a contract between Sovereign and Dawson. We address each point in turn.

**1.      Surface Damages Owed to the State**

{21} Plaintiffs agree that they do not seek to recover for surface damages owed to the State Land Office. On the other hand, Plaintiffs contend that as a lessee, Woody is entitled to damages to the range which it does seek. This brings us to the second basis on which the district court granted summary judgment, which we now address.

**2.      Damages to the Range**

{22} The district court initially ruled that under the terms of its lease, Woody is entitled to recover damages to the range. We agree. Dawson's permit from the State Land Office to conduct the geophysical seismic surveys specifically provides: "The

12

Permittee [Dawson] must settle with and compensate state land office lessees [such as Woody] for actual damage to or loss of livestock, authorized improvements, range, crops, and other valid existing rights recognized by law. (19.2.17.15(B) NMAC)." The lease between Woody and the State Land Office provided for damages which must be paid under 19.2.17.15(B) NMAC. The regulation states:

> Permittees must settle with and compensate state land office surface lessees for actual damages to or loss of livestock, authorized improvements, range, crops, and other valid existing rights recognized by law.

Settled authority requires the damages provided for in the permit and lease to be enforced. *See Dean*, 2003-NMCA-049, ¶ 14 (concluding that a surface owner was entitled to the benefit of a statutory oil and gas lease form which held the oil and gas lessee liable for "all damages to the range, livestock, growing crops or improvements" caused by the oil and gas lessee's operation on the lands (internal quotation marks and citation omitted)); *Tidewater*, 1954-NMSC-129, ¶¶ 20-21 (making same conclusion for surface lessee).

{23}    The district court ruled, however, that while Woody is entitled to damages to the range, the complaint does not plead such damages, and on this basis, granted Defendants summary judgment. The sufficiency of the pleadings to seek damages to the range presents a question of law, which we review de novo. *See Higgins v.*

13

*Hermes*, 1976-NMCA-066, ¶¶ 7-8, 89 N.M. 379, 552 P.2d 1227 (concluding as a matter of law that a complaint which alleged that the defendant's actions resulted in physical injuries to the plaintiff was sufficient to allege psychological damages and pain and suffering). For the following reasons, we disagree with the district court that the complaint fails to seek damages to the range.

{24} The complaint alleges that the permits and licenses issued to Sovereign "require compensation to the surface owner or lessee for damage done to the surface estate"; that Sovereign and Dawson are in violation of the permits and leases, and are thus in breach of contract, and that as a result of the breaches, "Plaintiffs have been damaged and are entitled to damages as necessary to compensate for the harm caused to the land." We agree with Plaintiffs that the foregoing allegations are sufficient to place Defendants on notice that they are seeking those damages provided for in the permits and leases: "actual damages to or loss of livestock, authorized improvements, range, crops, and other valid rights recognized by law." This is all that is required by our requirements for notice pleading. *See Valles v. Silverman*, 2004-NMCA-019, ¶ 18, 135 N.M. 91, 84 P.3d 1056 ("General allegations of conduct are sufficient, as long as they show that the party is entitled to relief and are sufficiently detailed to give the parties and the court a fair idea of the plaintiff's complaint and the relief requested." (alteration, internal quotation marks, and citation omitted); Rule 1-008(F)

14

NMRA ("All pleadings shall be so construed as to do substantial justice."). Moreover, Defendants could not claim surprise, as discovery responses provided clearly stated that Plaintiffs were seeking damages to the range.

{25}   Defendants assert that there is a technical difference between "surface damages" and "range damages" and that because Plaintiffs used the term "surface estate" as quoted above, they limited themselves to seeking "surface damages." The district court agreed with this argument and reasoning. However, we disagree with the broad contention that damages to the range of necessity excludes any and all surface damages. In *Tidewater*, our Supreme Court concluded that the following facts entitled a lessee to damages to the range under a lease with language identical to that before us here:

> The shot string extended for four and one-half miles and the work was in progress some eight days. Trucks ran up and down the line, according to the testimony, and as the soil was very dry, dust settled on the grass covering approximately a forty[-]acre strip of the shot string. Its use for grazing was thereby lost until it rained and there was no rain for quite a time after the work was completed.
>
> There was testimony the cattle were disturbed by the trucks being driven through them, in addition to the fact the trucks were on the ranch; that the cattle did not graze well during the period while the work was being done and that they lost weight on account thereof, to the damage of the appellee. There was also testimony the turf was damaged by the trucks driving back and forth and that the cattle had to go two miles to water because of the operations.

1954-NMSC-129, ¶¶ 23-24. Findings of fact that supported finding damages to the range included findings that in connection with the geophysical exploration work, "the plaintiff used drilling rigs, power wagons, trucks and other vehicular equipment and traveled back and forth across said lands and disturbed the defendant's livestock which were grazing thereon and damaged the [] range, livestock and improvements[.]" *Id.* ¶ 10 (internal quotation marks and citation omitted); *see also Dean*, 2003-NMCA-049, ¶¶ 17-18 (concluding there was sufficient proof of range damages where the plaintiff testified that his Blue Gamma grass was damaged by tracks and dust created by trucks during the defendant's seismic exploration).

{26} In addition, we note that besides alleging that Defendants failed to comply with their obligation to pay compensation as required by the permits and leases, the complaint alleges that Dawson was negligent in performing the geophysical seismic surveys, and as a result, "[T]he land has been damaged. The land damage is progressive and will continue to be progressive until properly repaired and remediated. The damage includes the cutting of roads, the killing of flora and the creation of areas where the vegetation was damaged to the point that it provides no barrier or prevention to erosion." These allegations are consistent with damages to the range as described in *Tidewater*, and they are then incorporated into the count alleging breach of contract. This manner of alleging damages is permissible.

16

Rule 1-010(B) NMRA ("[A] paragraph may be referred to by number in all succeeding pleadings.").

{27} While we do not here describe the full limits of what constitutes damages to the range, we do conclude that such damages do not exclude all damages to the surface of the land. Moreover, *Tidewater* does not allow for simply dividing damages that are due to a landlord on the one hand, and damages that are due to a tenant on the other hand, as the district court ruled. We therefore hold that the complaint gives adequate legal and factual notice in alleging damages to the range, and that such damages were improperly excluded by the summary judgment entered on this question by the district court.

**3.    Deposition Testimony**

{28} This brings us to the third basis on which the district court granted summary judgment on the breach of contract claim. The district court disregarded Dwain Woody's affidavit that was submitted in opposition to the motion for summary judgment on grounds that "it contradicts his prior sworn testimony" and counsel's statement during the deposition to clarify the testimony was "too vague to adequately place Defendants on notice of the precise nature of the allegation being pursued." The deposition testimony at issue is the following:

17

Q:     Okay. All right. Now are you claiming any damage to the blue areas where you are leasing lands from the state?

A:     No, I'm not.

{29}     During the deposition, Plaintiffs' counsel attempted to clarify the testimony, stating, " [I]f he's got a legal basis for claiming damages to lands that he leased, that's asserted in the complaint." In addition, responses to discovery requests had been provided to Defendants clearly stating that damages to the range on leased lands was being claimed pursuant to the state leases and permits. When Defendants sought summary judgment on the leased lands on the basis of Mr. Woody's deposition testimony, Plaintiffs submitted Mr. Woody's affidavit in which he explained:

7.     To the extent it needs to be clarified Woody Investments, LLC is making claims to damage to the range on land leased from the State of New Mexico and the United States of America. It was pled in the complaint and I now understand it to be one of the claims which has been made on behalf of Woody Investments, LLC in this case.

8.     I became confused in the deposition when being asked about the legal claims made in the case. I never intended to imply a claim would not be made for damage to the range or other necessary claims which are asserted as to state lease land.

9.     To the extent I was asked to comment on a legal position I am not qualified to address that and in the deposition when my counsel indicated a claim for damage leased land had been asserted I relied upon that to clarify and accurately state our position.

18

{30} In the foregoing circumstances, the question before us is whether Mr. Woody's affidavit was submitted in an attempt to create a sham issue of fact. *Rivera v. Trujillo*, 1999-NMCA-129, ¶ 9, 128 N.M. 106, 990 P.2d 219. "Ultimately, the determination of whether a genuine factual dispute exists is a question of law." *Id.* ¶ 8. Thus, our task on appeal is to examine the circumstances de novo and determine if the affidavit created a material issue of fact. *See id.* ¶ 10.

{31} In *Rivera*, suit was brought when a vehicle driven by Serrano collided with a semitruck. *Id.* ¶ 2. In his deposition, Serrano repeatedly testified in response to defense counsel's questions that he had "blacked out" and could not "remember" anything immediately prior to the accident. *Id.* ¶ 10 (internal quotation marks and citation omitted). Under questioning from his own attorney, Serrano then unequivocally and repeatedly testified to his understanding of what a "blackout" is, and that he lost consciousness while driving before he hit the truck. *Id.* ¶ 10. When a motion for summary judgment was filed on the basis that Serrano admitted he lost consciousness, an affidavit was filed that contradicted his deposition testimony that he understood what a "blackout" is. *Id.* ¶ 12. We concluded that "[s]uch post-hoc efforts to nullify unambiguous admissions under oath will not create a factual dispute sufficient to evade summary judgment." *Id.*

{32} The facts before us in this case are different. When Mr. Woody was asked whether damages were claimed for lands leased from the state and he answered in the negative, counsel pointed out that if he had a legal basis for making such a claim, it was set forth in the complaint. No follow-up questions were asked, and the complaint and discovery provided to Defendants clearly put Defendants on notice that Plaintiffs were seeking damages to the leased lands. The only real issue between the parties was whether damages to the range could be recovered, and we have addressed that as well. Under these circumstances, we are unable to conclude that the affidavit was submitted to create a sham issue of fact. *See Lotspeich v. Golden Oil Co.*, 1998-NMCA-101, ¶¶ 12, 19, 125 N.M. 365, 961 P.2d 790 (concluding that it was error not to consider affidavits submitted in opposition to motion for summary judgment where "[t]he claims set forth in the affidavits are neither conclusory nor without a factual base"). We therefore conclude that the district court erred in not considering Mr. Woody's affidavit.

**4.      Third-Party Beneficiary**

{33} This brings us to the final basis relied upon by the district court in granting summary judgment as to the breach of contract claims. Specifically, Plaintiffs contend they are entitled to recover under a "good neighbor policy" attached to a contract

between Sovereign and Dawson as third-party beneficiaries, and that summary judgment on this claim should be reversed. We disagree.

{34} It is a general rule that "one who is not a party to a contract cannot maintain suit upon it." *Staley v. New*, 1952-NMSC-102, ¶ 7, 56 N.M. 756, 250 P.2d 893. An exception to the general rule is a third-party beneficiary. *Permian Basin Inv. Corp. v. Lloyd*, 1957-NMSC-048, ¶ 22, 63 N.M. 1, 312 P.2d 533. Whether a person is a third-party beneficiary depends on the intent of the parties to the contract. *Fleet Mortg. Corp. v. Schuster*, 1991-NMSC-046, ¶ 4, 112 N.M. 48, 811 P.2d 81. "Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third[-]party beneficiary is an intended beneficiary." *Valdez v. Cillessen & Son, Inc.*, 1987-NMSC-015, ¶ 34, 105 N.M. 575, 734 P.2d 1258.

{35} There is no language in the contract conferring third-party beneficiary status upon Plaintiffs. Plaintiffs rely exclusively upon a statement made by Sovereign's managing member that "I guess what I would say is I think this is a benefit to everybody involved." At best this testimony rendered Plaintiffs as incidental beneficiaries. *See Fleet Mortg. Corp.*, 1991-NMSC-046, ¶ 4 (stating an incidental beneficiary is "a person who is neither the promisee of a contract nor the party to whom performance is to be rendered but who will derive a benefit from its performance.' " (quoting 2 S. Williston, *A Treatise on the Law of Contracts* § 402

21

(W. Jaeger 3d ed. 1959)) (alteration omitted)). As incidental beneficiaries, Plaintiffs are not entitled to recover under the contract. *Fleet Mortg. Corp.*, 1991-NMSC-046, ¶ 4.

**C.     Testimony of Plaintiffs' Expert Witness**

{36}     Plaintiffs contend that the district court committed reversible error in not allowing their expert witness to give his opinion on damages at the trial on their negligence and trespass claims. However, because the jury found no liability on the negligence and trespass claims, we do not address Plaintiffs' argument. *See Kysar v. BP Am. Prod. Co.*, 2012-NMCA-036, ¶ 21, 273 P.3d 867 ("[E]ven if a district court makes an erroneous ruling, it does not constitute reversible error unless it results in prejudice."); Rule 11-103(A) NMRA ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party[.]"); *W. Va. Dep't of Transp. v. Parkersburg Inn, Inc.*, 671 S.E.2d 693, 706 (W. Va. 2008) (reaffirming that where a plaintiff does not prevail on liability, any errors alleged as to damages are harmless).

**D.     Defendants' Cross Appeal**

{37}     Defendants filed a counterclaim seeking an award of attorney fees and costs pursuant to SOPA on the basis that Plaintiffs failed to exercise good faith with the provisions of SOPA. Section 70-12-7(A)(4) (providing that attorney fees and costs

may be awarded to the prevailing party if "the surface owner failed to exercise good faith in complying with the provisions of [SOPA] or the terms of a surface use and compensating agreement"). At the trial on Plaintiffs' negligence and trespass claims, the district court granted Plaintiffs' motion for a directed verdict on the counterclaim, and Defendants appeal. When the district court granted the directed verdict, Defendants were "prevailing" parties under Section 70-12-7(A)(4), because summary judgment was granted to Defendants under Plaintiffs' SOPA claim. However, we have reversed that summary judgment, and Defendants can no longer be considered as "prevailing" parties. Accordingly, we do not address the cross appeal.

**CONCLUSION**

{38}    The orders of the district court granting summary judgment on Plaintiffs' SOPA claim and breach of contract claims, except the third-party beneficiary claim, are reversed. This case is remanded to the district court for further proceedings consistent with this Opinion.

{39}    **IT IS SO ORDERED.**


                              _____

                              **MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**TIMOTHY L. GARCIA, Judge**